### AT A SPECIAL SESSION HOLDEN AT COLUMBUS, DEC., 1827.

---

### SHOTWELL AND WIFE *v.* SEDAM'S HEIRS.

Where the husband makes a devise to the widow, without stating that it is, or is not, in bar of dower, and the widow makes an agreement with the heir, reciting that it is in lieu of dower, and that she accepts certain things in satisfaction of the devise: *Held*, that she is barred of dower.

THIS was a petition in chancery for dower, in certain premises described in the bill, situate in Hamilton county, and adjourned here for decision, by the Supreme Court sitting in that county. The facts material to the point decided, are as follows:

The complainant, Nancy Shotwell, was the wife of Cornelius R. Sedam, deceased, and had subsequently intermarried with the complainant. The defendants were the heirs at law of Cornelius R. Sedam.

Cornelius R. Sedam made a last will, which was duly proven and established after his death. By this will he divided the prem-

ises in question, in a particular manner, among his four sons, assigning the mansion house to his son Cornelius. The will also contained this direction or bequest: " My wife, Nancy, so long as she remains my widow, to live in the house aforesaid, and to have her support from that part of the farm hereby bequeathed to my son Cornelius, during said widowhood." The residue of the testator's estate was bequeathed to the widow and children, in equal proportions. The will was duly proven, but the widow did not within 6] *six months thereafter declare her determination to take under the will, and have the declaration entered of record in court. She remained in the mansion house, and difficulties arising between her and Cornelius, they applied to the court of common pleas, to appoint persons to assess and determine the amount and manner of support to be received under the will. Persons were appointed who made a report, upon which the following agreement was entered into between the widow and Cornelius :

Whereas, a certain last will and testament of Cornelius R. Sedam, deceased, bequeathes, among other things therein named, as appears of record in the court of common pleas, of Hamilton county, State of Ohio, to Cornelius Sedam, a certain portion of land, comprising and encompassing the buildings and immediate late residence of the testator aforesaid ; and whereas, it is provided in said will that Nancy Sedam, the widow of the said testator, shall derive her support during her widowhood, from the said certain portion of land and residence aforesaid ; and whereas, the said Nancy, widow, having elected at the opening and proving of said will, to abide and take by and under said will, *in lieu of dower,* be the said election matter of *record* or not ; and whereas, the said court of common pleas, on the application and desire of the said Nancy Sedam and Cornelius Sedam, the parties contracting this agreement, seeing proper to appoint three disinterested persons to assess and set off the amount and manner of said support, agreeably to the will aforesaid ; and whereas, the said three persons having met and reported an award as, in their judgment, conformed to the nature of their said appointment; and whereas, the said Nancy and Cornelius, parties to this agreement, understanding the said will, and consenting thereto, as aforesaid, and being willing and desirous to preserve mutual friendship and good will, do, therefore, agree with each other to construe the sum and substance of said award, as it particularly relates to the support of said Nancy, in the following

manner, to wit: That so long as the said Nancy shall remain in widowhood, the widow of the said testator, and no longer, she may occupy the east half of the mansion house of the said testator, together with the kitchen and yard attached *thereto; also, may [7 occupy one stable, and the entry shed adjoining the said stable, as now standing northeast from the mansion house; also, may she occupy as a garden, a certain lot of ground adjoining said stable; also, may she have the privilege of using water from the *cistern* and *well* now belonging to said mansion house; also, may she have the privilege of raising and keeping stock as follows, of her own, and for herself, and for no person or persons else, to wit: her own pork and poultry, *provided*, that not more than four hogs (which may include one sow and pigs as one), nor more than twenty-four fowls (which may include and be composed of female fowls, not enumerating their unweaned young), shall at any time run at large; also, one horse kind, two cows and six sheep, for which said horse, cows, and sheep, she shall have the use of such range and pasture as the said Cornelius Sedam may be able conveniently to furnish, or as may be in common use by him for his own like stock; also, shall she have the privilege of taking fruit from the orchard, for her own use; also, for drying, to the amount of three bushels when dried. The said Cornelius Sedam shall furnish the said Nancy, annually, at her said residence, two barrels of cider, three barrels of apples, fifteen bushels of potatoes; also, three tons of hay, one hundred and fifty bushels of corn, two barrels of flour, twenty dollars in money, and twenty dollars in groceries. She shall also have the privilege of procuring from the woodlands of said Cornelius Sedam, firewood for her house use, provided she does not extend the same to such timbers as may be fit for making rails, without the consent of the said Cornelius, provided also the said Cornelius should prefer to deliver to the said Nancy, at her said residence, her necessary firewood, in which case he may elect so to do. It is hereby further agreed, that the said Nancy shall at no time assign, make over, or any how grant to any person, or persons, any part or portion of the aforesaid privileges.

In testimony whereof, the parties hereto have set their hands and seals, this fourteenth day of March, in the year 1825, in the presence of witnesses.    CORNELIUS SEDAM, [Seal.]
NANCY SEDAM.    [Seal.]

Witness: STEPHEN FEXTEN.

8] *Not long after the execution of this agreement, the widow intermarried with Shotwell, in consequence of which the provision under it terminated. The bill was then brought for dower. The defendants resisted the claim, on the ground that the provisions of the will being incompatible with dower, the testator intended it as an equivalent, and the widow having accepted it, could not afterward claim dower. They also insisted that the agreement with Cornelius Sedam was an acceptance, on her part, of the stipulations of that agreement in lieu of dower, which was made upon good consideration, and having been executed by both parties, up to the time of the marriage, could not, in equity, be avoided by either party. The opinion of the court being confined to the latter ground of defense, it is held unnecessary to report the arguments on the other.

The case was argued by W. H. Harrison, Jr., for complainants, and Fox, Hammond, and Storer, for defendants; the argument of Mr. Fox, embracing a concise view of the whole ground, it alone is reported.

HARRISON, for complainants:

If the original claim of the widow under the will is not inconsistent with her right to dower, the complainants' counsel contend that the agreement entered into, between the widow and the defendant Cornelius, does not alter the situation of the parties, or deprive the widow of her right to dower, if previous to that agreement she could claim dower in the premises, and the benevolence under the will. The article of agreement sufficiently explains the object of the parties, which was nothing more than for the purpose of reducing to a certainty what specific articles the widow would receive, in lieu of her general claim on the estate, for support and maintenance during widowhood. It was an arrangement entered into for their mutual accommodation. It was to reduce to certainty what was general and indefinite before; and to determine the amount and manner in which the widow was to receive her support. The agreement between the parties stands in place of the will, and by it their mutual rights were to be ascertained. The counsel for the complainants further contend, 9] that the evidence offered by *the defendants' counsel to prove declarations made by the widow, that she received the bounty under the will, in lieu of dower, is altogether inadmissible, the

evidence offered coming within the statute of frauds and perjuries. 3 Atk. 8.

It is not pretended that any fraud has been practiced on the defendants; they were the children of the testator, and Nancy the widow, entitled to dower in the premises. It does not come within the principles settled by the courts in those cases where the widow was not present at the sale of the property, and gave no notice of claim, or on being interrogated, denied any interest in the property. The estate of dower, being a freehold estate, can not be divested by any less formality than any other freehold estate, and is as such guarded by the statutes of frauds and perjuries.

Fox, for defendants:

The agreement entered into between the complainant Nancy and Cornelius Sedam is a complete bar. There is no pretense of any advantage having been taken of her in entering into the agreement, nor of any fraud or misrepresentation. And if such pretense had been urged, the whole of the testimony shows to the contrary. The agreement, in substance is, the same which the appraisers, appointed at her request, by the court of common pleas, had previously made for her, and what alterations have been made from their report were made at her request, and for her benefit. The language of the agreement shows the object they had in entering into it, viz: " *Being willing and desirous to preserve mutual friendship and good will, do therefore agree with each other,*" etc.

And there can be no doubt that had not the marriage taken place between Shotwell and the widow, that mutual friendship and good will would have existed between the parties.

It is, then, a contract entered into in good faith, and had the complainant Nancy remained a widow, it would have been an advantageous agreement to her. " A court of equity never interferes to relieve against a contract made in good faith, where both parties are mistaken as to the value." 1 Ohio, 450.

Where parties enter into an agreement, in order to enable a court of equity to interfere with it, a gross fraud must be proved. 2 Ohio, 195.

" The courts do not undertake to relieve parties from their [10 acts and deeds fairly done on a full knowledge of facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle

which is safe and practicable in the common intercourse of mankind." 2 Johns. Ch. 60.

In Pullen *v.* Ready, 2 Atk. 588, although it was manifest that the agreement to compromise was made under an incorrect opinion as to the law on the construction of the will, yet the chancellor says, page 591 : " If parties are entering into an agreement, and the very will out of which the forfeiture arose, is lying before them and their counsel, while the drafts are preparing, the parties shall be supposed to be acquainted with the *consequence* of the law as to this point, and shall not be relieved under a pretense of being surprised, with such strong circumstances attending it ; again, page 592 : " There is nothing more mischievous than for this court to decree a forfeiture after an agreement in which, if there is any mistake, it was the mistake of all the parties to the articles, and no one of them is more under an imposition than the other. This court is so far from assisting to set up the forfeiture again, that they would rather rejoice at the agreement, *because it has absolutely tied up the hands of the court from meddling in the question."* In 1 Atkins, 10, the case of Carr *v.* Carr is cited, where it was laid down by Lord Macclesfield, that an agreement entered into upon a *supposition of a right, or of a doubtful right,* though it after comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties, for the right must always be on one side or the other, and therefore the compromise of a doubtful right, is a sufficient foundation of an agreement."

Again, in Stockley *v.* Stockley, 1 Ves. & Beam, 23, specific performance of an agreement, the effect of a family compromise of doubtful rights, was decreed. The court say : " In family arrangements this court has administered an equity which is not applied to agreements generally."

This same doctrine is laid down in 1 Fonb. Eq., n. *v.,* 116, 117. "Equity will not interpose if the fact was, from its nature, doubtful, or, at the time of the agreement, equally unknown to both parties."

11] *Now in the present case there was no idea among the parties that the widow could claim dower, and claim under the will at the same time. It was *at least very doubtful,* whether she could do so, and a compromise of a doubtful right, for the purpose of quieting all uneasiness in the family, ought not to be disturbed.

6

In Meredith v. Nichols, 1 Marsh. (Ky.) 602, the court refused to set aside a compromise made by parties to settle a doubtful claim where all the facts were known to the parties, and where the mistake, if any existed, was in the law arising from the facts.

The same principle is also decided in 1 Bibb, 170, 171.

In Storrs v. Barker, 6 Johns. Ch. 170, the court decided that a party who had recommended another person to purchase an estate should not afterward be permitted to claim that estate, although it afterward appeared that the person recommending was really entitled to the property on account of a will being void in law.

Again, the defendant contends further, that whether the widow was bound to elect or not, and whether, if bound, she has elected, or whether there has been a compromise or not, is immaterial. The agreement entered into is without doubt a collateral satisfaction, and as such an equitable bar to any claim of dower. If she was entitled to dower she has accepted of the provisions in the agreement as a satisfaction in lieu of dower.

In Jones v. Powell, 6 Johns. Ch. 194, the widow had agreed to receive a house and lot in lieu of her dower, and had lived in and occupied it for a length of time, and Chancellor Kent decided that it was an equitable bar to the claim of dower.

He says, " the acceptance of a term of years, or of a sum of money, or of any other kind of collateral satisfaction, will constitute a good bar. There is no reason, why a widow, who is a free and competent moral agent, should not have the capacity to agree to any fair arrangement which convenience or prudence dictated, by which her dower should be extinguished by an equivalent substitute in money or in land."

In Cox, widow, v. Jagger et al., 2 Cowen, 638, the court held that an agreement to submit the question as to the value of dower, and an award on the subject directing *the tenant to pay the [12 widow thirty-five dollars per annum, extinguished the widow's claim (which rested in action merely), and that whether the compensation allowed by the arbitrators was sufficient or not, could not be inquired into.

By the Court:

It is certaintly a nice question, whether the devise in the will to the widow would not, upon being accepted by her, operate to bar her dower, in the premises devised to others, and charged with her

7

support.  But this question it is not necessary to decide, because the court are very clearly of opinion that the subsequent contract entered into between the widow and Cornelius Sedam constitutes an equitable bar to the dower claimed.

Whatever indulgence is shown to the acts of *feme coverts*, concerning their dower, there is no reason for treating the contracts of *feme soles*, where dower, in an estate of a deceased husband, is the subject of contract, in any other manner than the contracts of other competent persons.  In this case, the widow, with a perfect knowledge of the whole subject, and for the purpose of adjusting all difficulties, agreed to submit her rights, under the will, to the determination of mutual friends.  They made an award, and after that award was made, she entered into a written contract with the other party to carry the principle of the award into effect, upon *data* settled between themselves.

In this agreement, it is expressly recited that she had elected to take under the will, whether said election was matter of record or not, and that such election to take under the will was "*in lieu of dower.*"  A respectable provision is secured to her by this agreement, besides what she takes under the general devise, being a full child's part, and she enters into the enjoyment of it.  There is no pretense that she was ignorant of her rights, that any imposition was practiced upon her, or that the contract itself was in any respect unequal.  By her marriage she lost the benefit of it, but that being her voluntary act, can not affect the obligation or extent of the original contract.

*It is urged that this agreement extends no further than to settle what she was to receive under the will, and does not touch the question, whether the bequest in the will was in addition to or in lieu of dower.  The agreement itself refutes this argument.  It asserts, expressly, that the arrangement is to be in lieu of dower.  It was upon this basis that both parties to the contract proceeded.  And it can not be permitted to one of them to take all that the contract gave, upon a state of facts admitted between them at the time, and then deny her own recitation of the facts and set up a claim founded upon a directly opposite position.  This would be to practice a fraud upon the heir, who agreed to do certain things, in the expectation that, by doing them, his estate was discharged of dower.

Another argument urged against this agreement being made to operate as a bar to dower, is, that dower being real estate, can

·only be transferred by the legal mode of conveyance. This is not .a tenable position. A man may divest himself of ·an estate which lies in action only, by doing such acts and making such agre'e-ments as operate to bar his action, though no conveyance be executed. Thus, a controversy about title to real estate may be settled by arbitrament and award; so it may by accord and satis- · faction, and by other acts *in pais*. In the case of Smiley and wife *v.* Wright, 2 Ohio, 506, this court adjudged that a widow barred her recovery of dower by a parol assent that the administrator might sell the estate of her husband, discharged of her dower, upon the faith of which the purchase was mad'e. So, in this case, the agree-ment, though not a conveyance of the estate, may be set up in equity to bar her recovery. Equity would enforce a specific per-formance were the defendants driven to seek it; and as the claim-ant of dower comes into equity for relief, her equitable rights are all open to be considered. We are of opinion that she is barred by the agreement, and her bill must be dismissed. ·

---

*STATE OF OHIO *v.* HARVEY WELLMAN. [14

In a recognizance to appear and answer, the words, "in case said party was legally imprisoned on said charge," are surplusage.

THIS was *sci. fa.* upon a recognizance adjourned here by the Su-preme Court of Cuyahoga county. The defeasement was in these words:

"If the said John Kuln shall personally appear at the next court of common pleas, to be holden in and for said county, then and there to answer a charge of kidnapping, and to show cause why sentence should not be pronounced against him by said court, and not depart without leave, in case the said Joseph was then legally imprisoned on said charge, then the recognizance to be ·void,". etc.

The *sci. fa.* being served on Wellman only, he appeared, and showed for cause, "that the said Joseph Kuln, at the 'time of the supposed entering into said recognizance, by the said Wellman, was not legally imprisoned on said charge, in said recognizance

9