JOHN BUIE and others v. THE COMMISSIONERS OF FAYETTE-
VILLE and others.

*Taxation—Shares in National Banks.*

1. Shares in national banks owned by residents of the State may be assessed for taxation either at the place where the owners reside, or at the place where the bank is located, as the legislature of the State may elect.

2. Under the existing laws such shares must be taxed at the place where the owner or person required to list them resides.

(*Kyle* v. *Commissioners of Fayetteville*, 75 N. C. 445, cited, distinguished and approved.)

MOTION for an Injunction heard on the 27th of February, 1878, at CARTHAGE, before *Moore, J.*

The plaintiffs are citizens and residents of this State, and owners of a certain number of shares of stock in the Peoples National Bank of Fayetteville, but are not residents of the town of Fayetteville, nor do they carry on any business in said town.  They alleged among other things that the defendant assessed their shares of said stock for municipal taxation, and had authorized the town tax collector, the defendant Mallett, to proceed to collect the same—after his term of office expired—under the tax list for 1876, who had levied upon certain personal property to secure payment of the same, and had advertised it for sale ; and upon their application an order was granted by *Buxton, J.*, restraining the defendant corporation from further proceeding.

The defendants alleged among other things that under their charter they had the power to tax for municipal purposes all such subjects of taxation as are taxed by the State, and that their tax collector had the same powers, and was subject to the same penalties in collecting the town taxes, as was the sheriff in collecting State taxes, and that the amount of tax levied upon the plaintiffs' shares of stock is uniform with the tax upon similar property owned by citizens of the town, and is the same as that made by the township board of trustees.

Upon the hearing, His Honor was of opinion that the assessment of the bank stock of the plaintiffs made by the authorities of the town of Fayetteville, and all the proceedings had thereon were without authority of law, and granted the motion for an injunction, from which ruling the defendants appealed.

*Mr. B. Fuller,* for plaintiffs.

*Messrs. Guthrie & Carr,* and *W. F. Campbell, for* defendants.

SMITH, C. J. In the case of *Kyle* v. *Comm'rs. of Fayetteville*, 75 N. C., 445, it is decided that the shares of stock held by non-residents in a national bank can only be taxed in the city or town wherein the bank is located. The decision rests upon the provision in the State constitution by which all property, except such as may be exempted, is required to be taxed, and upon a clause in the act of Congress under which they are formed, permitting the State to impose upon the shares of stock a tax which shall not exceed that levied upon other moneyed capital in the hands of its own citizens, and restricting the tax on non-resident share holders to the town or district in which the bank is located. A State can not impose a tax upon these corporations as such, nor upon the property and interest of the share holder therein, unless authorized by Congress, and then only in the manner and to the extent allowed. The effect of the act for purposes of taxation is to sever the stock as property from the person of the owner, and to impart to it a new legal *situs*, that of the bank itself. Unless the shares of non-residents are taxed at the place where the corporation is formed, and their dividends intercepted and applied to the payment of the tax, they would be beyond the reach of the taxing power altogether. But by affixing to the property of the non-resident share holder the *situs* of the bank itself, of whose capital his shares represent a part, his interest is subjected to the exercise of the taxing power, and through the corporation, as his trustee, the payment of his tax enforced out of his part of distributed funds.

But another and different question is now presented, not disposed of in the decision of that case. The plaintiffs here are citizens and residents of the State, some of them living in Cumberland, and others, in Robeson county, and none of them residing or doing business within the town, so as to subject their persons to its corporate jurisdiction. They are all liable to State and county taxation on their property of

every kind except lands and farming utensils and other articles used in their cultivation at the places of their actual residence under the laws of the State.

The inquiry now is,—whether the shares of resident stock holders can be assessed and taxed like those of non-residents in the town where the bank is located and carries on its business. The question will be first considered as affected or controlled by the legislation of Congress:—

Soon after the passage of the national bank act, a controversy arose as to the true meaning of the clause which permitted shares to be taxed under State authority "at the place where the bank is located and not elsewhere." In some of the States it was held that the restriction confined the exercise of the taxing power to the town or district in which the corporation conducted its business, while in others it was decided to apply to the State and not to any of its territorial divisions, and that such tax could be assessed upon a resident stock holder at the place of his residence wherever it might be within the State. Burroughs on Taxation, 127, 128; *Austin v. Aldermen of Boston*, 14 Allen 359; *Clapp* v. *Bushington*, 42 Ver., 579.

The controversy was solved by an amendatory act passed in 1864, declaring the word "*place*" to mean the "*State*" wherein the bank is located. The only restraints imposed upon a State in the exercise of its taxing power over shares in national banks are :

1. That such tax shall not be at a greater rate than is assessed upon other moneyed capital in the hands of its individual citizens.

2 That the tax on shares of non-resident owners shall be imposed in the city or town where the bank is located.

Subject to these limitations, it is left to the legislature of a State to "determine and direct the manner and place of taxing all the shares" of banking associations within its limits. U. S. Rev. Stat., § 5219. It follows therefore that

a State may prescribe and regulate under the restraints mentioned, as well the place as the manner of making its assessments upon this kind of property according to its own discretion. A reference to some adjudged cases will support this view.

In *Nat. Bank* v. *Commonwealth*, 9 Wall. 353, the State of Kentucky levied a tax "on bank stock, or stock in any money-ed corporation of loan or discount, of fifty cents on each share thereof equal to one hundred dollars," and required the cashier of the corporation to pay the tax, and the Court held the enactment to be valid, and said : " If the State of Kentucky had a claim against a stockholder of the bank who was a non-resident of the State, it could undoubtedly collect the claim by legal proceeding in which the bank could be attached or garnisheed and made to pay the debt out of the means of the shareholder under its control. This is in effect what the law of Kentucky does in regard to the tax of the State on bank shares." And the Court further declared that " while Congress intended to limit State taxa-tion to the *shares* of the bank as distinguished from its *cap-ital*, and to provide against a discrimination in taxing such bank shares unfavorable to them as compared with the shares of other corporations and with other moneyed capi-tal, it did not intend *to prescribe to the States the mode* in which the tax should be collected."

In *Tappan* v. *Merchants' Nat. Bank*, 19 Wall. 490, the validi-ty of an act of Illinois passed in June, 1867, was called in question. That act levied a tax on stockholders in banks formed under the authority of the United States or of that State, " in the county, town or district where such bank or banking association is located and not· elsewhere, whether such stockholder reside in such county, town or district, or not." Chief Justice WAITE delivering the opinion says: " The State within which a national bank is situated has jurisdiction for the purposes of taxation *of all the shareholders*

of the bank, *both resident and non-resident, and of all its shares,* and may legislate accordingly." The question then before the Court was whether such property was not so annexed to and identified with the person of the owner as to exist only in contemplation of law where the owner was, and (except in case of non-residents expressly provided for in the act) could be made liable to public burdens at any other place. It was decided that a State might tax the stock of its own citizens, as the stock of non-residents was taxed, at the *situs* of the bank; and the Court declined to give an opinion as to whether such tax could be assessed elsewhere in the State.

In *Adams* v. *Nashville,* 95 U. S. Rep. 19, the construction of this clause again came before the Supreme Court, and it was alleged that an exemption, resulting from a statute of Tennessee which declared that no tax should be put on the capital of any bank, state or national, operated to impose a burden upon stock holders in national banks which was not put upon other moneyed capital belonging to individuals, and was in conflict with the provisions of the law. The Court say: " That the act of congress was not intended to control the State power on the subject of taxation," and that its plain intention " was to protect corporations formed under its authority from unfriendly discrimination by the States in the exercise of their taxing powers."

The law does not itself require the assessment of any tax upon shares in these associations. It places them under the taxing power of a State which may choose to exercise it, protected however against adverse discriminating legis lation. There is no obligation to charge this species of property with the public burden imposed in the act, and if it exists, it is by virtue of our own constitution and laws which require all property to be taxed, and upon a uniform rule. This brings us to the consideration of our own legislation on the subject.

The provisions of the revenue act (Laws 1874–'75, ch. 184) by which the facts of this case are governed, if not inconsistent with the constitution, definitely determine the dispute. Some of these will be cited :—

§ 6 requires land and personal property on farms used in cultivating them to be given in in the township wherein the land lies. § 7 requires all other personal property whatever, "including moneys on hand or on deposit, credits, investments in bonds, *stocks in National, State, and private banks,*" &c., to be given in *in the township in which the person so charged resides* on the 1st day of April." § 9 declares that the list of taxable property shall include (par. 6) "stocks in national and private banks, &c. and their estimated value." So in § 11 the cashier of each bank or banking association, whether State or National, is directed to give in to the "board of assessors for the township in which such bank or banking association is situated, all shares of stock composing their corporation, as agent for and in the name of the owners of said shares of stock who may be, non-residents, and the deposits of all non-residents."

It is thus apparent that the General Assembly has provided for the taxation of non-resident share holders in National banks at the place of location of the bank, and is not only silent in regard to resident share holders in that connection, but in preceding sections requires all stock of the latter to be listed and taxed at the owner's domicil. As more clearly indicative of the legislative will, the last revenue act directs such cashiers to forward a list of stock holders resident in the several counties to the commissioners of the respective counties in order that this property may not escape taxation.

But it was urged in the argument of defendants' counsel that this method of taxing is not uniform inasmuch as the shares of resident and non-resident stock holders are taxed at different places and necessarily at different *ad valorem*

sums, but this is a misconception of the uniformity prescribed. Absolute equality is unattainable in any system of raising revenue. "All persons," in the language of Chief Justice WAITE, in *Tappan* v. *Merchants Nat. Bank*, "owning the same kind of property are taxed as he (the complaining share holder) is taxed." It is difficult to see how a tax upon all stock (except that of the non-resident which unless taxed through the association could not be taxed at all) levied and collected at the owner's residence can be unequal or wanting in uniformity, which, as the Chief Justice in the case cited declares, is but another name for equality. Shares in National banks are assessed upon the same *ad valorem* principle, and pay the same tax as shares in every other moneyed association, and indeed as other forms of property whose locality is that of the owners. The exceptional fact is the addition of property belonging to non-residents to the volume of taxable property, which in this mode only can be brought within reach of the taxing power. But this does not disturb the uniformity of the system prescribed by the constitution, and under which every person is taxed alike, upon land and such articles as are used in farming at the place where they are; upon other personal estate where the owner resides.

We have examined the cases cited by the defendants' counsel,—*Bank of Columbus* v. *Hines*, 3 Ohio 1, and *Township, &c.* v. *Talcott*, 19 Wall. 666,—and do not find them at all in conflict with our opinion as to the uniformity intended in the constitution, but rather in its support. Substantially the same views are expressed in both cases, and we will only refer to what is said in one of them :

In discussing a clause in the constitution of Michigan directing its legislature to provide a uniform rule of taxation, Mr. Justice SWAYNE uses this language: "The object of this provision was to prevent unjust discrimination. It prevents property from being classified, and taxed as clas-

sified by different rules. All kinds of property must be taxed uniformly or be exempt. The uniformity must be co-extensive with the territory to which the tax applies. If a State tax, it must be uniform all over the State. If a county or city tax, it must be uniform throughout such county or city." Our revenue system is in entire harmony with these views.

We have discussed the subject of State and county taxation because the charter of the town of Fayetteville confers upon its municipal authorities the same powers of taxation, and on the same subjects of taxation within its jurisdictional limits, which the State itself possesses. Nor do we find it necessary to consider the extent of the powers of the defendant, Mallett, as town tax collector, after the expiration of his term of office, to proceed with the collection of taxes.

We are therefore of opinion and so declare, that the shares in National banks owned by residents of this State may be assessed under the act of Congress, either at the place where such owners reside or at the place where the bank is located, as the legislature of a State may elect; and that under existing laws, such shares must be taxed, and can be taxed only at the place where the owner or person who is required to list them, resides. The tax attempted to be enforced against the plaintiffs is imposed without authority of law, and is void; and the plaintiffs are entitled to relief by injunction.

No error.

PER CURIAM.                                    Judgment affirmed.