W. M. PERSON, FOR HIMSELF AND OTHER TAXPAYERS, v. BOARD OF STATE TAX COMMISSIONERS, AND A. D. WATTS, REVENUE COMMISSIONER.

(Filed 20 December, 1922.)

**1. Constitutional Law—Taxation.**

The State Constitution vests exclusive authority in the Legislature to levy taxes, Art. V, sec. 3, which may not be interfered with by the courts, a coördinate part of the Government, when it is exercised within the constitutional restrictions. Art. I, sec. 8.

**2. Taxation — Corporations — Shares of Stock—Shareholders—Constitutional Law.**

Art. V, sec. 3, of our State Constitution requires legislative enactment for the levy of taxes, and objection to a statute that requires corporations to pay the taxes on every element of value that goes to make up their taxable assets, and specifically excludes the payment of taxes upon the shares of stock by the individual owner is untenable, and *mandamus* to compel the State Tax Commissioner to enforce the payment of taxes by the individual owner on his shares, contrary to the provisions of the statute, will not lie. The relation of the shareholders to the corporation, as creditors, discussed by ADAMS, J.

**3. Constitutional Law—Mandamus—Actions—Controversy.**

While either the relator or respondent may raise constitutional questions for the Court to pass upon in proceedings for *mandamus*, they must be material to the determination of the rights of the parties, so as to conclude them by judgment in the controversy presented to the courts; and the courts will not pass upon such questions when they merely present abstract principles not so related to the subject-matter of the action. Laws 1921, ch. 34, sec. 4.

STACY, J., concurring; WALKER and HOKE, JJ., concurring in both opinions; CLARK, C. J., dissenting.

PETITION for *mandamus,* heard on demurrer by *Calvert, J.,* at chambers in Raleigh, on 7 July, 1922. The demurrer was sustained, and the plaintiff appealed.

*W. M. Person for plaintiff.*
*Attorney-General Manning and Assistant Attorney-General Nash for the defendant.*

ADAMS, J. At the session of 1901 the General Assembly constituted the Corporation Commission a Board of State Tax Commissioners, and imposed upon such board certain duties relative to the listing, assessment, and taxation of property. The statutes defining and circumscribing these duties, as modified or amended from time to time, have since been continued in force and effect; but on 8 March, 1921, the duties of the State Tax Commissioners were transferred to the State Department of Revenue to be performed after 1 May by the Commissioner of Revenue, except as otherwise provided, and thereupon the Tax Commission became *functus officio.* The original summons in the proceeding was issued against the Board of State Tax Commissioners on 6 May, 1922, and purports to have been served on the chairman of the board, but A. D. Watts, the commissioner of revenue, was thereafter made a party defendant, and the suit is prosecuted against him alone.

On the day the summons was issued the plaintiff filed his "complaint and petition." After reciting certain duties of the Tax Commission, the constitutional mandate that property shall be taxed by a uniform rule, and the statutory provisions for listing corporate property for taxation, he alleges in substance that all "exempting statutes" are unconstitutional, that shareholders in corporations by means of "device, camouflage, and fraud" evade the payment of all taxes except an "irreducible minimum on their visible property," and bear none of the burdens of government, but leave them to be borne by the "rural homesteader" and the dwellers in cities and towns. He further alleges that the contention that a tax on stocks is paid by the corporations in which they are held is a "smoke screen to hide the duplicity" of the owners from the "burdened taxpayers of the visible property of North Carolina," and that the "board of State taxation" should require not only the capital stock of corporations, but the stocks held by individuals to be listed for taxation at their true value in money.

The defendant demurred, and moved to dismiss the petition on the ground that it does not state a cause of action, and that the court had no jurisdiction to grant the relief demanded. His Honor sustained the demurrer, and the plaintiff appealed.

Shorn of verbiage, the contention of the plaintiff is this: That the Constitution of North Carolina, Art. V, sec. 3, provides that "laws shall

be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise"; that stockholders should therefore list for taxation in their own names all shares of stock held by them; that all statutes purporting to exempt the individual owner from the necessity of listing his stocks in this manner are void and of no effect; and that it is the duty of the defendant to enforce compliance with this construction of the constitutional provision.

On the other hand, the defendant insists that the plaintiff's contention is based on a misconception both of the constitutional requirement and of the laws enacted for the purpose of carrying it into effect, and that the existing method of taxing property, corporate and individual, is in strict compliance with the mandate of the organic law.

These respective contentions illustrate a situation out of which have arisen two theories concerning the taxation of investments in the stocks of corporations. The first is that the statutory method just referred to is such an evasion of Article V, section 3, of the Constitution as exempts from taxation practically all shares of stocks in corporations (with a few exceptions) organized under the laws of North Carolina, and that while the corporation should pay a tax upon the capital stock, the shareholder should likewise pay a tax upon his investment in or contribution to such capital stock, the alleged reason being that the shares or certificates of stock are the individual property of the shareholder, and are separate and distinct from the capital stock of the corporation. The advocates of the other theory concede that the property of a shareholder in the stock of a corporation is for certain purposes, and in a restricted sense distinct from the property owned by the corporation as a legal entity, but they say that shares of stock are, and for many years have been, returned for taxation by the proper officer of the corporation on behalf of the owner, and that the tax assessed thereon is paid by the company; that the situs of the shares for taxation is transferred from the residence of the owner to the place where the principal office of the corporation is situated, and that this method assures the taxation of all shares of stock, many of which, especially those of nonresident owners, had previously escaped taxation; that in no other way is the stockholder relieved of the direct payment of tax on his stock; and that under these circumstances the payment of a tax on his shares by the individual owner would amount to double taxation, which, while not prohibited by the Constitution, has not been sanctioned by the General Assembly. It is further insisted that this method has been adopted by the Legislature as the most effective means of securing the best financial returns from such taxation, and that provision has been made for imposing upon all classes of assessable corporate property, real and personal (including the capital stock, the franchise, and shares of stock), a just and equitable proportion of the burdens of government.

We have referred to these theories (to the first of which the plaintiff evidently adheres) for the purpose of showing the background of the plaintiff's position and the basis upon which his complaint is made to rest; and upon inspection of the complaint, the demurrer, the motion to dismiss, and the argument of counsel, we have concluded that there are several cogent reasons for holding that the instant proceeding has been improvidently instituted, and that it cannot be maintained.

In the first place, the relief sought could not be obtained in any event without the exercise of legislative functions, and the plaintiff's fatal error is found in the assumption that such functions may be exercised by the courts, notwithstanding the constitutional separation of the several departments of the government. The Declaration of Rights provides: "The legislative, executive, and supreme judicial powers of the government ought to be forever separate and distinct from each other." Art. I, sec. 8. As to the wisdom of this provision there is practically no divergence of opinion—it is the rock upon which rests the fabric of our government. Indeed, the whole theory of constitutional government in this State and in the United States is characterized by the care with which the separation of the departments has been preserved, and by a marked jealousy of encroachment by one upon another. In Black's Constitutional Law it is said: "It is a fundamental maxim of political science, recognized and carried into effect in the Federal Constitution and the constitutions of all the states, that good government and the protection of rights require that the legislative, executive, and judicial powers should not be confided to the same person or body, but should be apportioned to separate and mutually independent departments of government" (p. 83). "As the rule, it may be said that the American state constitutions now divide the powers of government, and provide that no person or body belonging to one branch shall exercise powers or functions belonging to the others. But even in the absence of such an explicit declaration, the creation of the several departments and the description of their respective powers would be sufficient to secure each against encroachments by the others" (*ibid.,* p. 86).

The power to levy taxes is vested exclusively in the legislative department of the government. Constitution, Art. V. "Within constitutional limits, the power of the Legislature in matters of taxation is supreme, and its action cannot be revised or annulled by the judicial department. Nor can the courts be authorized or required by statute to levy and collect taxes, as that is a legislative function and not judicial." Black Con. Law, 93. And *Judge Cooley* says: "It must always be conceded that the proper authority to determine what should and what should not constitute a public burden is the legislative department of the State. This is not only true for the State at large, but it is true,

also, in respect to each municipality or political division of the State; these inferior corporate existences having only such authority in this regard as the Legislature shall confer upon them." Cons. Lim., 698.

The courts have absolutely no authority to control or supervise the power vested by the Constitution in the General Assembly as a coördinate branch of the government. They do not assume to direct the course of legislation or to share in the making of the laws or to exercise any power to repeal a statute. They concede that the fundamental law guarantees to the Legislature the inherent right to discharge its functions and to regulate its internal concerns in accordance with law without interference by any other department of the government, and that their jurisdiction is limited to interpreting and declaring the law as it is written. It is only when the Legislature transcends the bounds prescribed by the Constitution, and the question of the constitutionality of a law is directly and necessarily involved that the courts may say, "Hitherto thou shalt come, but no further."

It is in the light of these principles that we must consider the following provision, which has been enacted at each biennial session of the Legislature since 1887: "Individual stockholders in any corporation, joint-stock association, limited partnership, or a company paying a tax on its capital stock shall not be required to pay any tax on said stock or list the same, nor shall corporations legally holding capital stock in other corporations upon which the tax has been paid by the corporation issuing the same be required to pay any tax on said stock or list the same." Laws 1921, ch. 34, sec. 4.

It is evident, therefore, that the plaintiff has resorted to the courts for a writ of *mandamus* to compel the defendant to subject himself to liability to removal from office by doing an act which the law expressly forbids, and the futility of his application is found in the principle, unquestioned and fundamental, that an officer, inferior or other, is not responsible at the suit of private parties for the nonperformance of an act omitted by him in obedience to the commands of the law. This has been repeatedly decided. In *Wilson v. Jenkins,* 72 N. C., 5, there was an application for a *mandamus* to compel the Auditor of the State to audit and the Treasurer to pay certain coupons representing interest on the bonded debt of the State. The Legislature had passed an act prohibiting the Auditor from recognizing any claim for principal or interest on any portion of the bonded debt, and prohibiting the Treasurer from paying any claim for such interest, except as therein provided. The trial judge rendered judgment in favor of the defendant, and *Chief Justice Pearson,* affirming the judgment, said: "The General Assembly has absolute control over the finances of the State. The Public Treasurer and Auditor are mere ministerial officers, bound to obey the orders

of the General Assembly. It follows that the courts have. no power to compel, by *mandamus,* the Public Treasurer to pay a debt which the General Assembly has directed him not to pay, or the Auditor to give a warrant upon the Treasurer which the General Assembly has directed him not to give, unless the act of the General Assembly be void as violating the Constitution of the United States or of this State." To the same effect are *Shaffer v. Jenkins,* 72 N. C., 275; *Boner v. Adams,* 65 N. C., 639, and the dissenting opinion of the present *Chief Justice* in *White v. Auditor,* 126 N. C., 596.

But the plaintiff insists that this Court may declare an act of the Legislature unconstitutional, and that the statute in question is in conflict with Article V, section 3, of the Constitution, and hence should be disregarded. This question is hereinafter discussed, but to the suggestion there are two other answers which are conclusive against the plaintiff's demands. The first is this: Even if the act should be stricken out or declared to be ineffective, the plaintiff, upon the allegations in his complaint, would still be without remedy. It will be seen upon a casual reading that section 3, Article V, of the Constitution is not self-executing; in express terms it provides that laws shall be passed taxing property by a uniform rule; and unless such laws are passed property cannot be taxed. If the act were declared void, by what authority could the Court or the defendant enact a law commanding the shareholder to list his stocks for taxation? More than this, if the statute should be treated as of no effect, the parties would still be bound by another to the effect that the owner shall return for taxation only such investments, stocks, and bonds as are not taxed through the corporation itself. Laws 1921, ch. 38, sec. 40.

And the second answer is that the record does not present for decision the constitutionality of the statute as a concrete question. It is true that the prayer for relief does not necessarily determine the nature of the action, but the allegations in the complaint considered in connection with the plaintiff's demand for relief, present for decision an abstract question of law, merely a matter of academic interest. The plaintiff first prays the Court to "declare and adjudge any legislative enactment reducing and exempting property in North Carolina to be unlawful, unconstitutional, unjust, inequitable, and against public policy." This language evidently includes real and personal property held by the State and by counties, cities, towns, school districts, religious bodies, and educational and charitable institutions, besides such household and kitchen furniture, mechanical and agricultural implements, and other kinds of personal property as are expressly exempted from taxation; but we may reasonably assume that it is not the purpose of the proceeding to abolish the exemption which has been extended to such property.

It being unnecessary for this reason to consider the complaint in connection with the first prayer for relief, we may now advert to the second. The second prayer shows that the plaintiff's object is to obtain a *mandamus* requiring the defendant to list "all property in stocks, common and preferred," in the names of the owners at its true value in money. In *mandamus* proceedings the constitutionality of a statute may be raised in proper cases by the relator or by the respondent—by the respondent where he claims that the invalidity of such statute exempts him from the performance of a duty which it purports to impose; and by the relator where he claims that such statute, by reason of its invalidity, excuses the respondent from doing an act or performing a duty to the relator's hurt or injury. 18 R. C. L., 105. But on the face of the record neither of these conditions appears, or is in any way presented to the Court. The statute referred to is not affirmative, but negative in its character. It provides that the individual stockholder "shall not be required to pay any tax on said stock," and there is no statute requiring him to make such payment. If, for instance, instead of this negative enactment the Legislature had affirmatively required the Revenue Department to list for taxation all shares of stock in the names of the owners, leaving in effect the other existing laws with respect to the taxation of corporate property, or if the defendant had undertaken to list such shares in breach of the act, and a shareholder had sought to enjoin the listing of such stocks, a vital controversy would have arisen in which the rights of the parties could have been litigated. But not so in this proceeding; it presents no real or actual controversy by which litigated rights may be determined. Judicial tribunals are not moot courts. It is their duty, not to express opinions which can have no practical effect, but to decide questions of merit, to render judgments that may be enforced, to do practical work, and to put an end to litigation. *Crawley v. Woodfin,* 78 N. C., 6; *Parker v. Bank,* 152 N. C., 253; *Kistler v. R. R.,* 164 N. C., 366.

The plaintiff is equally ill-advised in the selection of his tribunal and in the choice of his remedial process. His forum is the Legislature, but if it were a judicial tribunal, *mandamus* could not avail him. While this writ, originally prerogative, is now substantially a proceeding to enforce legal rights, it is nevertheless limited by conditions that are not applicable to an ordinary suit at law, and is employed as an extraordinary remedy in cases where other remedies fail. It is generally invoked to enforce a ministerial act or duty, and in some instances to command the performance of an imperative public duty for which there is no specific remedy, and it is uniformly denied where, as in this case, it would be nugatory or unavailing. It is essential for the petition to set out the respondent's failure to perform a manifest duty imposed upon

him, and if he has committed no breach of duty, and has not left undone that which he should have done, the writ, if issued, would accomplish nothing.

It should be borne in mind that the petitioner does not sufficiently allege a breach of duty by the respondent. He alleges that it is the duty of the respondent to have listed on the tax books by the owners for the purpose of taxation investments in bonds, stocks, and joint-stock companies, but he further alleges that this duty is enjoined by Public Laws of 1921, ch. 38, sec. 3, and an examination of this section and others will show that the Department of Revenue is utterly devoid of power to say what property shall or shall not be taxed. The Board of Tax Commissioners was given general supervision of the system of taxation, and the administration of all assessments and tax laws, as well as of assessors and boards of equalization, to the end that all assessments of property should be made relatively just and uniform, and that all property should be assessed at its true value in money. It was authorized to receive complaints as to property liable to taxation that had been assessed fraudulently or improperly, or not assessed at all, and to make such orders as were necessary to correct the irregularity complained of, and when advisable, to reconvene the county boards of equalization and to direct them to raise or to lower any assessment in order to equalize as far as practicable the valuation of all classes of property. The Tax Commissioners were constituted, also, a Board of Equalization, with power to equalize the sundry valuations of real property in the several counties of the State. These, in brief, are the duties prescribed by statute, and from this legislation appear two conspicuous facts: (1) The Legislature refrained from the preposterous attempt to delegate to the Tax Commissioners authority to say what property should be taxed; and apart from this, and as incidental to the main question, it appears that (2) the powers conferred upon them involve the exercise of judicial discretion which the courts have no power to control. And these facts are equally applicable to the State Department of Revenue. In view of these things, and of established fundamental principles, it would be perfectly idle to say either that the courts may assume the office of legislation or control the exercise of judicial discretion in the performance of the duties required of a public officer. Public Laws 1921, chs. 38 and 40; *Brodnax v. Groom,* 64 N. C., 245; *Evans v. Comrs.,* 89 N. C., 55; *Battle v. Rocky Mount,* 156 N. C., 329; *Comrs. v. Board,* 158 N. C., 191; *Ward v. Comrs.,* 146 N. C., 534; *Burton v. Furman,* 115 N. C., 166; *S. v. Justices,* 24 N. C., 430; *Lutterloh v. Comrs.,* 65 N. C., 403; *Belmont v. Reilly,* 71 N. C., 260; *Edgerton v. Kirby,* 156 N. C., 347; *Key v. Board of Education,* 170 N. C., 797; *Dula v. Trustees,* 177 N. C., 426; *Board of Education v. Board of Comrs.,* 178 N. C., 305.

That the plaintiff cannot maintain his position is beyond cavil or peradventure; the proceeding must be dismissed; and the opinion could well be concluded with the announcement of this result. But, as indicated, the plaintiff insists that the so-called "exempting statute" should be declared unconstitutional; and while, as we have shown, the question is not presented on the record, and the courts, recognizing the exercise of the power to decide on the competency of a law as their ultimate and supreme function, will not ordinarily assume the task of determining grave constitutional questions unless necessarily presented, still the paramount importance of a question which assails the policy adopted by the Legislature for taxing corporate property, and continued with minor changes for well-nigh half a century, demands an expression of opinion by the Court.

The statute objected to simply provides that if the corporation pays a tax on its capital stock the shareholder shall not be required either to list or to pay a tax on his individual shares.

In his assault upon this statute the plaintiff says, in effect, that the Constitution requires the payment of a tax by the shareholder upon his individual stock, even when the corporation pays the tax on its capital stock. This is the plaintiff's fundamental and fatal error. In the Constitution of North Carolina there is no such provision. It is required that laws be passed taxing by a uniform rule all moneys, credits, *investments* in bonds, stocks, joint-stock companies, or otherwise. Constitution, Art. V, sec. 3. It is the investment that is to be taxed, not necessarily the shares or certificates of stock. What is meant by investment? It is the laying out of money in the purchase of property, or the amount of money invested, either by way of loan or in the purchase of stocks, securities, or any other kind of income-producing property. It is defined, also, as some species of property from which an income or profit is expected to be derived in the ordinary course of business. *Bank v. Barrett* (Cal.), 58 Pac., 914; *People v. Ins. Co.* (N. Y.), 8 Am. Dec., 243; *Ins. Co. v. Phillips,* 141 Mass., 535; *Drake v. Crane,* 127 Mo., 85; *People v. Feitner,* 167 N. Y., 1. The ordinary conception of "capital stock" is the fund, property, or other means contributed or agreed to be contributed by shareholders as the financial basis for the prosecution of the business of the corporation. *Dodge v. Motor Co.,* 3 A. L. R., 434. But this definition, as applied to the statutes regulating the taxation of the capital stock of a corporation, is altogether inadequate and misleading. Perhaps the greater part of the confusion in thought concerning the taxation of the stockholder's shares as well as of the capital stock has arisen from a mistaken notion of the property that is actually taxed under the name of "capital stock." What property does this term include? Much more than the money or other

property contributed by the shareholders as the financial basis of the business; it is not limited, as is frequently supposed, to the aggregate amount of the face value of the certificates of stock; but the "capital stock" of corporations which is actually taxed in accordance with the statute, as may be seen hereafter, embraces every element that can impart value to the stock, including every enhancement in value that accrues to the corporation from the success of its business. So, by virtue of the statute there is nothing of value possessed by a corporation that is allowed to escape taxation. Certainly there can be no doubt that the shareholder's "investment" is taxed as the Constitution requires. The truth is, the certificate of stock represents the shareholder's investment in the corporation as the landowner's deed represents his investment in the land. If the land is taxed, why tax the deed? If the capital stock is taxed, why tax the certificates which represent the capital stock? No doubt the Legislature possesses the power to repeal the statute and to tax both; no doubt it possesses the power to devise a system of taxation that would be more burdensome to all classes, but if the Constitution does not require it, why should such additional burden be imposed? It is not denied that shares of stock in a restricted sense are the individual property of the owner, and in such sense may be considered as separate from the capital stock. The holder may sell his certificate without the consent of the company, but in doing so he sells only his interest in the corporation. His interest as a shareholder may become adverse to that of the corporation, but by investing in the capital stock he parts with the individual control of his money. It is only in this limited sense that shares of stock are separate from the corporation. In a broader and more real sense the interest of the shareholder is inseparable from that of the corporation. In the larger sense there is but one property, for shares of stock have value only as the taxed property of the corporation has value. During his lifetime the owner can derive no income from his shares unless the business of the corporation earns a profit; and upon his death, when his personal property passes to his distributee, it is not the certificate that is subject to an inheritance tax, but under a special statute the value of the owner's interest in the corporation represented by the certificate, just as such tax is assessed, not upon the deed, but upon the value of the land which descends from the ancestor to the heir. It seems, therefore, to be unquestionable that if the corporation be required to pay a tax on the capital stock as it is valued under the statute and the shareholders a similar tax on all their shares double the amount of the money or property contributed by the shareholders is thereby taxed, and no play upon words can escape the logic of this conclusion. The Constitution neither forbids nor requires double taxation, but the Legislature has refrained from levying the

double tax. The Constitution requires that investments in stocks shall be taxed, but it does not forbid the exemption of shares from taxation when the capital stock itself is taxed. And as the controversy turns upon the validity or invalidity of the statutory exemption of shares of stock it is apparent that the question whether taxing the individual shares as well as the capital stock is called double taxation is not as affecting the merits of the appeal a matter of material concern.

We have examined the cases cited by the plaintiff, and have made a somewhat diligent search among the decisions of other states and of the Supreme Court of the United States and have failed to find a single authority among our own decisions or elsewhere that supports the plaintiff's argument as to the question under discussion. Several decisions were cited in which occur expressions to the effect that payment of a tax on the capital stock and on the holder's shares is not double taxation, but neither of them was decided on facts that presented the question of double taxation when the capital stock of the corporation was valued and taxed as it is in North Carolina. This fact should be kept in mind, for we are admonished by authority no less eminent than *Chief Justice Marshall* that every opinion, to be correctly understood, ought to be considered with a view to the case in which it was delivered. *U. S. v. Burr,* 4 Cranch, 470.

This Court has already expressed its opinion as to the constitutional validity of this exemption. Neither in *Belo v. Comrs.,* 82 N. C., 415, nor in *Worth v. R. R.,* 89 N. C., 305, nor in *Comrs. v. Tobacco Co.,* 116 N. C., 441, was this "exempting statute" considered; but the opinion of the Court in the last of these cases recognizes the power of the Legislature to require a corporation to list for taxation shares of stock on behalf of the stockholder, and to deduct from the total value of such shares the value of the property which it has listed in this State. In the opinion of the Court the *Chief Justice* said: "Originally the tax upon the shares of stock was collected of the individual shareholders at their several places of residence. *Buie v. Comrs.,* 79 N. C., 267. But under that method many shares failed to be listed for taxation. Besides the shares of nonresident owners, except those of national banks, escaped taxation in this State under the ruling in *R. R. v. Comrs.,* 91 N. C., 454. To remedy this, the provision was passed, which is section 14 of chapter 296, Laws 1893, and which requires the list of shares to be given in by the proper officer of the corporation which shall pay the same in behalf of the shareholders. This does not affect the liability of the shares to tax as the property of the shareholders, but is simply for the convenience of the State in collecting the tax. The effect is merely to change the situs of the shares for taxation from the residence of the owner to the locality where the chief office of the corporation is situated,

as was held in *Wiley v. Comrs.,* 111 N. C., 397. It simply extends to the collection of taxes due by shareholders in other corporations the mode of collection already in force as to shareholders in national banks. U. S. Rev. St., sec. 5219."

This decision is approved in *Pullen v. Corporation Com.,* 152 N. C., 556, in which *Manning, J.,* said: "It will be observed that in the section of the Machinery Act under consideration it is made the duty of the defendant commission to deduct from both the market and the actual value of the shares of stock, as ascertained by it, before fixing the taxable value of such shares, the aggregate of the real and personal property listed by the banking institution. The principle of deduction is further recognized in the cases of individuals and corporations, when they come to list their solvent credits, in that from their solvent credits they are authorized to deduct their obligations or debts due by them, and the balance is to be listed as their taxable solvent credits. This principle is recognized by the Supreme Court of Illinois as constitutional, in *Loan Assn. v. Keith,* 153 Ill., 609. The Legislature has for many years recognized this as an equitable system of taxation; it has been incorporated for more than twenty-five years in our system of taxation, and this notwithstanding that it has been well settled by repeated decisions of this and other courts that shares of stock are, in the hands of the shareholder, separate and distinct property from the property of the corporation.

"The fairness and justness of the principle of deductions in the method of ascertaining the taxable value of the subjects of taxation, in order to avoid the essential harshness and inequity of double taxation, was, we think, distinctly sanctioned as long ago as 1882, in *R. R. v. Comrs.,* 87 N. C., 414. That case was presented to this Court on appeal by both parties from the judgment of the Superior Court, and in delivering the unanimous opinion of the Court, *Chief Justice Smith,* as pertinent to the present matter, said: 'The commissioners object further that the assessed value of the preferred stock should be reduced by the value of the real estate and franchise as taxed separately in the several counties traversed by the road. The ruling of the Court in directing the reduction is obviously made to avoid the imposition of a double tax, since the value of all property owned by a corporation, in whatever consisting, and including the franchise, is the true and fair measure of the value of all its stock, and hence the General Assembly permits stockholders, in valuing their shares, to 'deduct their ratable proportion of tax paid by the corporation upon its property as such in this State. Sec. 8, par. 6.' "

In the later case of *Brown v. Jackson,* 179 N. C., 363, this statute (exempting shares from taxation when the capital stock is taxed) was

considered, and *Brown, J.,* said: "In conclusion, we do not question the validity of the statute hereinbefore quoted, which has been the legislative tax policy of this State for so many years. Acting within its constitutional powers, it is for the Legislature to determine the subjects of taxation, and it is not ours to declare what it shall include and what it shall omit." *Mr. Justice Allen* dissented on another ground, but recognized the constitutionality of the statute, saying: "I concur fully in the proposition that it is for the Legislature to determine the subjects of taxation, and think, under the facts in this record, it has said the shares of the plaintiff shall not be taxed."

This Court and the Legislature have apparently agreed in their construction of Article V, section 3, of the Constitution, so far as it relates to this statute, and although we are not bound by it, the legislative interpretation is entitled to our respectful consideration. So this Court has declared. In *Attorney-General v. Bank,* 21 N. C., 216, *Chief Justice Ruffin* said: "Besides the reasons for our opinion drawn from the provisions of the act itself, the most forcible one arises out of the contemporaneous construction put on the act by the stockholders, fiscal agents of the State and the Legislature. . . . Their acts, contemporaneously and continued consistently through a period of eighteen years, are such a strong proof of the sense in which the act was understood by those who passed it as to make their construction almost as authoritative as if the words admitted of no other."

Examination of the legislative policy concerning the taxation of corporate property reveals the intent, uniform and continuous, not to tax both the capital stock and the shares of the holder. This was the policy of the State before the Constitution of 1868 was adopted, and it has since been continued, as will appear by reference to the various acts.

"The stock or interest held by individuals in all corporations, excepting banks, shall not be listed or assessed among the individual property of the stockholders, but shall be listed by the corporation, and the corporation shall pay the tax thereon." Public Laws 1860-61, ch. 31, sec. 5.

"The tax list shall contain stocks in any incorporated company or joint-stock association and their estimated value; but the stock shall not be taxed if the company pays a tax." Public Laws 1869, ch. 74, sec. 12 (6).

Practically the same legislation was reënacted at each session until 1887, when the Legislature passed the "exempting statute," which with unimportant changes has since been continued in effect.

To understand the trend and significance of this "exempting statute," when considered in connection with Article V, section 3, of the Constitution, it is necessary to bear in mind the existing method of taxing corporate stock. For such purpose the following synopsis will be suffi-

cient. The proper officer of a corporation having capital stock is required to make a report in writing to the State Tax Commission (now the State Department of Revenue), stating the total authorized capital stock, the total authorized number of shares, the number of shares of stock issued, and the par value of each share, the amount paid into the treasury on each share, the amount of capital stock paid in, the amount of capital stock on which a dividend has been declared, the date and the amount of the dividend, and the highest price as well as the average price at which the stock was sold during the year. Such officer, after being duly sworn or affirmed, must also estimate and appraise the capital stock of said company at its actual value in cash on the first day of May, after deducting therefrom the assessed value of all real and personal estate upon which the corporation pays tax and the value of the shares of stock legally held and owned by such company in other corporations incorporated in this State and paying tax on its capital stock in this State. Every such corporation may deduct from the total amount of its capital stock, surplus, and undivided profits the total amount of its actual investment in . such bonds of the State, of the United States, of the Federal Farm Loan Bank, and of the Joint-stock Land Bank, as have been held as a continuing investment by such corporation for a period of not less than three months prior to the day on which such report is required to be made. If the State Department is not satisfied with the appraisement and valuation made and returned, it may make a valuation based upon the facts contained in the report, or upon any other information in its possession, and may settle an account on the valuation so made for taxes, penalties, and interest due the State thereon; and if the corporation is dissatisfied with the settlement thus made, it may appeal to the Superior Court in term, and thence to the Supreme Court. Public Laws 1921, ch. 38, sec. 43. In making such assessment, the Department of Revenue shall first ascertain the true cash value of the entire property owned by the corporation, taking the aggregate value of all the shares of capital stock in case the shares have a market value, or in case they have none, taking the actual value of the same or of the capital of the corporation, however it may be divided, in case no shares of stock have been issued. If the property is mortgaged, its true cash value shall be ascertained by adding to the market value of the aggregate shares of stock, or to the value of the capital stock, if there are no shares, the aggregate amount of the outstanding mortgage or mortgages. The result so obtained shall be treated as the true cash value of the property of the corporation. Section 57. If any of its property is locally assessed, the amount of the local assessment is to be deducted from the cash value finally ascertained, and as a part of the total amount of the taxes there must be estimated also the tax on the franchise of the company. Section 82. The Commissioner of Revenue

PERSON v. WATTS.

finds the actual market value of the capital stock, to the end that if the corporation has not made return to the list-taker of its real and personal property at a total value as great as the total value of its capital stock (or of the "investments" in its shares of stock), the deficiency may be certified to the register of deeds of the proper county, and the amount of such deficiency added to the listed value of its real and personal property under the name of "corporate excess."

It is argued that there is a distinction between common and preferred stock, and that the latter is a debt of the corporation, and should be treated as a bond. To this we do not agree, so far as the question of taxation is concerned. Both classes of stocks are "investments" in the capital stock of the corporation. The investor in the common stock elects to hazard his investment against the company's failure to earn dividends and against its liability to liquidation. Preferred stock is no less an investment, the investor therein assuming a similar hazard on condition that he be given a prior lien on the earnings and property of the company. As an equitable balance against the prior lien given the preferred stockholders the holders of common stock are usually entrusted with the management of the business. The holders of both kinds of stocks are creditors of the corporation in the sense that the corporation owes them a return on their investment, but neither occupies toward the corporation the relation of a bondholder. The distinction is this: The corporation is required by statute to make return to the Commissioner of Revenue of all its shares of stock, common and preferred alike, to be assessed and valued at the actual value of such shares, so that no investment in the capital stock of such corporation may escape taxation. The corporation also pays a franchise tax based upon its preferred as well as its common stock. The relation between a corporation and the holders of its bonds is the complete relation of debtor and creditor. Bonds issued by a corporation are not in any sense a part of its capital stock; they are not reported by it or assessed against it as a part of its capital stock; and, therefore, the holders of such bonds are required to list them for taxation.

When the existing system of taxing corporate property is considered, it is not difficult to perceive that care has been taken to insure the taxation of investments in the stocks of corporations by dealing primarily with the companies and not with the shareholders. This, in fact, is the system which generally prevails. The North Carolina Corporation Code is authority for the statement that a large majority of the states (enumerating forty-four) have adopted a policy similar to or identical with that pursued in our own legislation (p. 501). However that may be, the oft-repeated enactment of a statute which was intended to prevent double taxation has evidently met the approval of the State. We are

33—184

dealing with the statute and the Constitution as they are, and not as they would be if otherwise written. Changes in them must be wrought as provided by the law—by the people or by their representatives in the law-making department, or by both; but in any event the Legislature is responsible to the electorate and not to the courts.

In our opinion, the statute which provides that individual stockholders in any corporation or company paying a tax on its capital stock shall not be required to pay any tax on said stock, or list the same, is not in conflict with Article V, section 3, of the Constitution of North Carolina.

The plaintiff's action must be dismissed.

Action dismissed.

WALKER and HOKE, JJ., concurring.

STACY, J., concurring: I concur fully in all that is said in the clear and able opinion of *Associate Justice Adams,* speaking for the Court. But, in view of the wide range of discussion which the case has taken, I deem it not amiss to add the following:

Article V, section 3, of the State Constitution provides: "Laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise; and, also, all real and personal property, according to its true value in money."

It will be observed that this provision does not require the Legislature to levy a tax on investments in bonds, stocks, etc., *in the hands of the individual holders thereof,* nor is there any provision in the Constitution requiring that such investments shall be taxed twice. Section 40 of the Machinery Act of 1921 specifies what shall be enumerated on the tax list of each individual taxpayer; and item 21 of said section is as follows: "Money, investments, stocks and bonds, and shares of stock in incorporated companies which are not taxed through the corporation itself." Note the words, "which are not taxed through the corporation itself." The purpose of this language was to exempt from taxation in the hands of individual shareholders certificates of stock in corporations, where the State had already exercised the right to tax such stock through the corporation itself, or "at its source," as it is sometimes called. Manifestly, so far as the constitutional mandate is concerned, it is immaterial whether the Legislature impose a uniform tax on such investments in the hands of the individual shareholders or levy and collect such tax through the corporation itself. The method to be employed is one involving a question of state-craft, to be determined by the Legislature, and not for the courts to decide. Our functions are judicial, and we have no power to levy assessments or to devise a scheme of taxation. *Fert. Co. v. McFall,* 128 Tenn., 645.

A certificate of stock is simply a written acknowledgment by a corporation of the interest of the holder in its property and franchises. It has no value, except that derived from the company issuing it; and its legal status is in the nature of a chose in. action. The value of all the property owned by a corporation, of whatever kind, including its franchise, is the true and fair measure of the value of all its stock. When it is said that a person owns a certain number of shares of stock, it is meant that such person has a right to participate in the profits of the corporation, and in its property on dissolution, after payment of its debts, in the proportion that the number of his shares bears to the whole capital stock. Clark on Corporations, ch. 10; *R. R. v. Comrs.*, 87 N. C., 426; *Redmond v. Comrs.*, 87 N. C., 122.

That the stock of a corporation has no intrinsic value separate and apart from the property of the corporation is clearly shown from what is said in *Gibbons v. Mahon*, 136 U. S., 549, and *Towne v. Eisner*, 245 U. S., 418, relative to a stock dividend:

"A. stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares, and the proportional interest of each shareholder remains the same. The only change is in the evidence, which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones. In short, the corporation is no poorer and the stockholder is no richer than they were before." See, also, *Logan County v. U. S.*, 169 U. S., 255.

But more directly to the point at issue is the language of *Chief Justice Chase* in *Van Allen v. The Assessors*, 70 U. S., 598:

"It is true that the shareholder has no right to the possession of any part of the corporate property while the corporation exists and its affairs are honestly managed. He has committed his .interest, for a time, to the possession and control of the corporation of which he is a member, and he has only a member's voice in the management of it.

"So a man who has leased a farm has no right to possession or control during the lease; but who denies his property in the farm? And if a dozen owners join in the lease, has not each one an interest in the property to the extent of one-twelfth? (And if, under the law or by agreement, the lessee be required to pay the tax on the farm, who would contend that the owner should pay it again?)

"So, if for the time the property of the shareholder is placed beyond his direct control and converted into property of the association, how

can that circumstance affect the intrinsic character of his shares as shares of the whole corporate property? How can a man's shares of any property be the subject of valuation at all if not with reference to the amount and productiveness of the property of which they are a part? What value can they have except that given them by that amount and that productiveness? A certificate of title to a share is not a share. It is evidence of. the shareholder's interest. His interest may be transferred by the transfer of the certificate; but it is not the certificate that is valued when the worth of the share is estimated either by the speculator in the market or by the tax assessor. It is the property which it represents that is valued by the speculator often with reference to speculation only, but by the public officer, always, if he does his duty, by the real worth of the property, all things considered."

Undoubtedly the State, in creating a corporation, may provide for the taxation locally of all its shares of stock, whether owned by residents or nonresidents; and this, by virtue of the authority of the chartering state to determine the basis of organization and the liability of all of its shareholders. *Corry v. Baltimore,* 196 U. S., 466; *Hannis Dist. Co. v. Baltimore,* 216 U. S., 285. Under this principle, North Carolina levies a tax upon all the issued and outstanding capital stock of domestic corporations, regardless of where the holders of said stock may reside. Revenue Act, sec. 82. Such shares are, therefore, exempt from taxation in the hands of resident stockholders, because the corporation itself pays the tax. If the stock were not taxed in this way, the State would lose all the revenue derived from the tax paid by the corporation on shares held by nonresidents, for it is only through the corporation that such shares may be taxed at all. *Comrs. v. Tobacco Co.,* 116 N. C., 441. "In case of shareholders not residing in the State, it is the only mode in which the State can reach their shares for taxation." *Nat. Bank v. Commonwealth,* 76 U. S., 361.

The "capital stock" of a corporation, strictly speaking, is the amount in money or property subscribed and paid in, or secured to be paid in, by the shareholders, and always remains the same unless changed by proper legal authority. *Burrall v. Railroad Co.,* 75 N. Y., 211. The phrase in its technical sense, is not used to indicate the value of the property of the corporation, and takes no account of profits or losses. *S. v. Morristown Fire Assn.,* 23 N. J. L., 195. The surplus of a corporation is no part of its capital stock. *Farrington v. Tenn.,* 95 U. S., 687. The "capital" of a corporation, on the other hand, is a broader term, and includes all the funds, securities, credits, and property of every kind and description whatsoever belonging to the corporation. "The word 'capital' is unambiguous. It signifies the actual estate, whether in money or property, which is owned by an individual or a corporation. In reference to a corporation, it is the aggregate of the

sum subscribed and paid in, or secured to be paid in, by the shareholders, with the addition of all gains or profits realized in the use and investment of those sums, or, if losses have been incurred, then it is the residue after deducting such losses." *Comstock, C. J.,* in *People v. Commissioners of Taxes, etc.,* 23 N. Y., 219. In revenue statutes, as is the case with us, the words "capital stock," as applied to corporations, are often used interchangeably with the word "capital," and both are frequently used to express the same thing, to wit, the entire property and assets of the corporation. *Christensen v. Eno,* 106 N. Y., 97.

It is of no avail to say that capital stock and shares of stock are separate and distinct pieces of property, and therefore taxable, one in the name of the corporation and the other in the hands of the individual shareholders, when, as a matter of fact, the State taxes both (in the sense they are spoken of as different pieces of property) through the corporation itself. *Farrington v. Tenn., supra; Bank v. Tenn.,* 161 U. S., 146. Our statutes provide that every item or element of worth tending to impart value to the shares of stock of a corporation shall be reported to the taxing authorities of the State for purposes of assessment and taxation. Therefore, by whatever name it may be called, every "investment in stocks" is taxed at least one time in North Carolina, and this is all that the Constitution requires. In those cases where the courts have drawn a distinction between the capital stock of the corporation and the shares of stock in the hands of the individual holders thereof, the term "capital stock" was employed in a different sense from that in which it is used in the statutes now before us. See opinion of *Mr. Justice Nelson* in *Van Allen v. The Assessors,* 70 U. S., 573, and *Bradley v. The People,* 71 U. S., 459; *Nat. Bank v. Commonwealth,* 76 U. S., 359; 7 R. C. L., 195; Clark on Corp., ch. 10. Under our revenue laws, the shares of stock themselves, and all of them, are required to be listed for taxation by the corporation and not otherwise. *Trust Co. v. Lumberton,* 179 N. C., 411.

Congress has expressly provided that shares of stock in national banks, wherever held, shall be taxable in the State, and only in the State, where the bank is located; thus recognizing the propriety and really suggesting the wisdom of taxing shares of stock in a corporation only at its home office or through the company issuing the same. U. S. Revised Statutes, sec. 5219 (Comp. St., sec. 9784); *Merchants Nat. Bank v. Richmond,* 256 U. S., 635; *Home Savings Bank v. Des Moines,* 205 U. S., 503; *Nat. Bank v. Owensboro,* 173 U. S., 664; *Aberdeen Bank v. Chehalis County,* 166 U. S., 440; *Mercantile Bank v. New York,* 121 U. S., 138; *Tenn. v. Whitworth,* 117 U. S., 129; *Evansville Bank v. Britton,* 105 U. S., 322; *Nat. Bank v. Commonwealth,* 76 U. S., 353.

This arrangement, which has been followed by the General Assembly of North Carolina from time immemorial, does no violence to the letter

or to the spirit of the constitutional provision above recited, but is, in fact, in conformity with it. The Legislature has never thought it necessary to tax shares of stock in domestic corporations twice in order to comply with this provision of the Constitution.

In a case from Ohio, with a constitutional provision exactly similar to the one in the North Carolina Constitution, and under a statute of that state, exempting shares of stock in domestic corporations from taxation in the hands of individual shareholders, when the same was paid by the corporation itself, the Supreme Court of the United States recognized and treated with approval the principle and arrangement there adopted. See *Sturges v. Carter,* 114 U. S., 511, and *Jones v. Davis,* 35 Ohio St., 474. As stated above, the constitutional provision was identical with ours, and the exemption in the Ohio statute was as follows: "No person shall be required to list for taxation any share or shares of the capital stock of any company, the capital stock of which is taxed in the name of such company." See, also, opinion of *Mr. Justice Wayne* in *Gordon v. Appeal Tax Court,* 3 Howard, 133.

In addition to Ohio, the following states have adopted policies of taxation, in regard to corporate stock, either similar to or identical with the legislation in this State, though it is conceded that their constitutional requirements may be different, to wit: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, and District of Columbia. In short, so far as I have been able to ascertain, no state in the American Union has adopted and carried into actual practice the policy advocated by the plaintiff in this suit. Indeed, the adoption of such a system by our Legislature, in my judgment, would be exceedingly unwise and fraught with incalculable harm to the State, for justice would be a stranger to such a system.

Our domestic corporations are fully taxed. They pay a franchise tax, also an *ad valorem* tax on all their real, personal, and tangible property in accordance with the Constitution, and then they list all the shares of their capital stock for the owners thereof, and pay the taxes thereon for the shareholders at a valuation fixed by the State's taxing officers. Thus, all the property of North Carolina corporations, including all the shares of stock, whether owned by citizens of North Carolina or nonresidents, contribute to the support of our State Government and its subdivisions.

The fallacy of the plaintiff's argument lies in the fact that it is based on a false premise. He assumes that shares of stock in domestic corpo-

rations are not taxed at all under our present revenue laws, when, as a matter of fact, just the reverse is true. Because the Legislature has adopted one policy, and he thinks another should be pursued, falls far short of proving his case. This establishes no more than a difference of opinion between him and the law-making body of the State. His views have been expressed in the legislative halls, but they have met with disapproval there. Then, why should they be considered all-controlling here, when it is not within our province or power to say which method should be followed?

"Within constitutional limits, the power of the Legislature in matters of taxation is supreme, and its action cannot be revised or annulled by the judicial department. Nor can the courts be authorized or required by statute to levy and collect taxes, as that is a legislative function, and not judicial." Black on Const. Law (3 ed.), p. 93.

Those who criticise our revenue laws would have the Legislature to double the tax on the corporate holdings of progressive North Carolinians who have invested their money in all kinds of industrial and commercial enterprises within the State; and this, it should be remembered, in face of the fact that only residents would pay such tax, for nonresident holders of stock in domestic corporations would be exempt from its payment. No state can levy a tax, except through the corporation itself, on shares of stock in the hands of nonresidents of the taxing state, for such property is beyond its jurisdiction. *Metropolitan L. Ins. Co. v. New Orleans,* 205 U. S., 395.

The principle of taxation here sought to be established is in vogue nowhere in this country. Then why should it be adopted in North Carolina? Ordinarily, under modern conditions, capital will coöperate to achieve large and beneficial results only in corporate form; and, if it is to be taxed twice in the same jurisdiction, it will flee from the borders of the State and seek investment under fairer and more favorable laws.

The constant agitation of this matter can serve no good purpose; and, while the case might be allowed to go off on a question of procedure, it is probably not amiss for us to say that, in our opinion, the policy heretofore established by the Legislature, and now in vogue in this State, is entirely permissible and is in full compliance with the constitutional requirement above recited, and that the sections of the Revenue and Machinery Acts here called in question are valid.

WALKER and HOKE, JJ., concurring.

CLARK, C. J., *Not concurring in the dismissal of the action:* The Constitution of North Carolina, Art. V, sec. 3, provides: "Laws shall be passed *taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise; and, also, all real and personal property, according to its true value in money.*"

The statute of which the plaintiff complains on behalf of himself and other taxpayers appears near the end in a very long section, to wit, sec. 4, ch. 34, Laws 1921, and is as follows: *"Individual stockholders* in any corporation, joint-stock association, limited partnership, or company paying a tax on its capital stock *shall not be required to pay any tax on said stock or list the same, nor shall corporations legally holding capital stock in other corporations in this State, upon which the tax has been paid by the corporation issuing the same be required to pay any tax on said stock or list the same."*

"Investments in stocks" are made by those who buy them, or otherwise acquire them, and not by the corporations who sell them. The owners of the stock possess them absolutely, have a right to devise, sell, or otherwise dispose of them. The corporation which has sold the stock has received the purchase price therefor, and has parted with and has no control over the stock of the purchaser to whom it has sold. The corporation is no wise liable for the debts of the stockholder and the stockholder is no wise liable for the debts of the corporation. The two are entirely separate and distinct. The owner has acquired this stock as he would acquire livestock and the seller has sold it and received the purchase price just as the seller of livestock or any other property.

Compare the clear language of the Constitution and the statute. It would be impossible to conceive of any more direct and palpable conflict with the Constitution, which requires that "investments in stocks" shall be taxed like all other property, "according to its true value in money," than this statute, which *exempts* "investments in stocks" from all taxation. It does not require one to be a lawyer, but simply the capacity to read the English language to see the absolute conflict between this statute exempting these immense accumulations of capital invested in stocks and bonds and the Constitution, which requires without equivocation that they shall be taxed.

Indeed, in the very same chapter, Laws 1921, ch. 34, sec. 6 (7), it is recognized that all stocks are the property of the owner and not the property of the corporation, for it is provided that as to the inheritance taxes, the State Tax Commission shall "determine the amount of inheritance tax due the State of North Carolina on the transfer of any such bonds or stocks; it shall determine the value of such bonds or stock, and shall have full authority to do all things necessary to make full and final settlement of all such inheritance taxes due, or to become due, and shall make prompt return to the State Treasury of all such taxes collected." In this section the whole subject of bonds and shares of stock of any decedent holder is treated, and it is provided that such stocks and bonds are liable to the payment of the inheritance tax prior to any other creditor. It regulates the transfer of such stocks and bonds as

the property of the decedent to provide against fraud upon the State in the nonpayment of the tax thereon as the property of the owner. Did these stocks become the property of the stockholder and taxable only by his death? Stocks and bonds are liable for the debts of the owner, and are not liable for the debts of the corporation; if they are liable for inheritance taxes on the death of the owner, they are liable for the annual taxes for the support of the Government. The fanciful theory that investments in stocks shall be exempt from taxation is contradicted by the very chapter in which it is contained.

Not only every office-holder, but every voter takes an oath to support and maintain the Constitution of the State. Such an open, not to say defiant, contradiction of this provision of the Constitution by the statute entitled the plaintiff, and all others of like mind, to place their complaint before the courts that it may be declared whether such exemption is valid or not. The great railroads are now maintaining in the courts a complaint that they are taxed in violation of the Constitution. Surely the plaintiff and those who concur with him have a right to place before the judicial tribunals of the State a like complaint that by this statute they have been overtaxed to threefold or more the former tax rate, and that this is caused by the exemption of this vast amount of the "canned wealth" of the State, the money invested in stocks and bonds, which by this statute has been exempted from paying their fair share, or any share, of the burdens of carrying on the Government.

The total valuation of all the real and personal property for the year 1921 filed in the State Auditor's office is in round numbers $3,119 millions. The estimate of the total valuation of stocks and bonds which are exempted from taxation is not returned to the Auditor's office, but we know from the official records of the U. S. Government that the corporations in this State, which are in number about 6,000, return as the valuation of their stock to the Federal Government on 4,300 of these corporations $932,000,000 for the past year. This is a matter of which we can take judicial notice. As the statute requires no corporations having less than $5,000 of stocks to make this return, and as the return omits not only all stocks in corporations under $5,000, but there is no return made to the Government on the stocks held in this State issued by corporations outside of North Carolina, it is probably an under-estimate to say that all the untaxed stocks in this State will aggregate over fifteen hundred millions, or in round numbers, nearly one-half of the amount of property listed for taxation. We know that the taxation on the listed property in most of our cities averages $2.50 per $100. Putting the rate of taxation, State, county, and town, at the low average of $1 per $100, it is very clear that the owners of stocks in the State are illegally exempted annually from the payment of $15,000,000 of taxes. That

is to say, that they should pay that much if there was conformity with the Constitution, which requires that "Laws shall be passed taxing by uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise, and all real and personal property, according to its true value in money."

This amount, which should be paid by the owners of stocks in corporations, is paid for them by adding it to the taxation of those who are not wealthy enough to have idle capital to invest in stocks.

It follows, therefore, that if all property were taxed as the Constitution requires, *"uniformly, including investments in stocks and bonds,"* the rate of taxation from the realty, livestock, and other personal property, and others not wealthy enough to invest in stocks, would be reduced at least one-third. This would be accomplished simply by the owners of the bonds and stocks paying taxes thereon at the same rate as the owners of other property. They would not pay $15,000,000, for the total of taxpaying property being increased the rate would be decidedly lower.

In this estimate omission has been made of the fact that the Constitution requires that bonds should be taxed, and while we have no data, such as returns of stocks which the Federal Government gives us, we know from high authority that throughout the country there is altogether fifty billions invested in bonds which are exempted from taxation. One-half of this fifty billions is stated to be the bonds of the Federal and State Government, which are exempted from taxation upon the ground that to some extent, at least, their exemption from taxation is a collection of taxes at the source by the lower rate of interest. However, it may be as to the alleged financial reasons for exempting National and State bonds, there is no such ground for the exemption of the stocks or bonds of railroads, banks, cotton mills, water-power companies, tobacco companies, or any other corporations. They pay, and should pay, on their property, but in doing so there is no reason why those to whom they sell their stocks, and whose money they have received in exchange, should be exempt from taxation on the stocks and bonds of these corporations on which the owners receive dividends and interest, and not infrequently nontaxable stock dividends doubling and trebling their *"tax-free"* holdings.

The Constitution forbids expressly the exemption of stocks and bonds, but it is clearly violated. There is no more reason that the owners of the stocks which the corporations have sold to those who own them should be exempted from taxation than that their bonds or the indebtedness by individuals should be exempt from taxation. A certificate of stock in a corporation is simply an indebtedness on which the seller agrees to pay dividends in lieu of interest. On common stock, the rate

of the dividend is not fixed; on preferred stock there is a fixed rate, and stock differs in no wise from bonds except that the owner of the stock in most companies is allowed to share in the election of officers, which is at most mostly an illusory privilege, as all corporations are governed by those who arrange to control the majority of the stock.

The provision that *"all investments in bonds and stocks"* shall be taxed by the same *uniform* rate as all other property was put into the Constitution as a guarantee that those not able to purchase stocks and bonds should not be over-taxed by the exemption of owners of stocks and bonds, who are, of all people, most able to pay taxes, but whose influence might procure exemption from taxation, as it has done, notwithstanding the constitutional guarantee against it.

There is no question that has come up to this Court which is more entitled to a fair and full consideration. If the railroads are entitled to have considered their claim for over-taxation, surely the masses of the people, those who, not owning exempted property, are paying the taxes which should be paid by the property illegally exempted, have the right to have their complaint considered and the Constitution enforced by holding invalid and illegal any tax levy that taxes them and exempts so large a body of idle wealth, the taxes on which are paid by those who do not have money to invest in such exempted property.

Not only are the stocks of corporations of this State exempted, but the same chapter which levies the revenue, Laws 1921, ch. 34, sec. 3, provides that not only are individual stockholders in corporations in this State exempted from payment of taxes thereon, but the statute, Laws 1921, ch. 34, sec. 4, provides: "Nor shall any individual stockholder of any foreign corporation be required to list or pay taxes on any share of its capital stock if two-thirds in value of its entire property is situated and taxed in the State of North Carolina, or if such corporation has tangible assets within this State assessed for taxation at a value not exceeding the par value of the total stock owned by citizens of this State, and the said corporation pays franchise tax on its entire issue and outstanding capital stock at the same rate as paid by domestic corporations."

It is to be noted that as to the franchise tax which is levied on corporations for the privilege of doing business and which is analogous to license tax paid by lawyers, merchants, and all others for carrying on business, the franchise tax has been usually one-twenty-fifth of 1 per cent, and never over one-tenth of 1 per cent, which produces an insignificant amount. There is no reason, as this Court has often held, to grant an exemption to stockholders on this ground.

It may be further noted that while there is an illusory provision that where the capital stock is more than the aggregate value of the property

of a corporation there shall be levied a tax on the excess of capital stock. Under this head there was assessed for taxation last year only the petty sum of 17 millions of capital stock, and the total taxes paid by individuals on stocks in this State was $25,000 on a true valuation of over $1,500,000,000, as above estimated. The taxes which should have been paid by the owners of this vast body of "tax free" stocks was paid by those not able to invest in stocks and bonds.

It can be readily seen that upon a fair estimate of the stocks and bonds and other property illegally exempted from taxation there is approximately at least one-third in "tax-free" stocks, and adding "tax-free" bonds, more than one-half in value of the property in this State which pays no taxes whatever, though the Constitution requires expressly that this exempted property shall be taxed uniformly with other property. This exemption is of the property owned by the wealthiest section of the people with the result that it more than doubles the taxes upon the farmers and other real estate owners and the laborers and merchants and all others unable to spare surplus money to be invested in exempted stocks and bonds.

From the adoption of the Constitution in 1868 down to 1887—20 years—this constitutional provision that stocks and bonds should be taxed uniformly with other property according to its true value was observed. In 1887 two great railroads of this State were entirely exempt on all their property, which exemption was later declared illegal in 1892, and set aside by this Court in the well known case of *R. R. v. Allsbrook,* 110 N. C., 137. Though in that case, as in this, it was claimed that they had enjoyed such exemption for so long a time that they were protected in its continued enjoyment, the Court held that there was no statute of limitations that would protect an illegal exemption by lapse of time. This opinion of the Court, written by the same hand that writes this, was carried to the United States Supreme Court and was affirmed in *R. R. v. Allsbrook,* 146 U. S., 279. There was in their case an express agreement claimed to have been made by the State in their charter for such exemption. This Court held that the Legislature had. no power to grant such exemption. In their case, also, there was not, as in this instance, an express provision to the contrary in the Constitution which forbade the exemption of the owners of stocks from taxation.

The corporations not foreseeing in 1887 that the State would enforce the taxation of their properties, and by the aid of other corporations, secured in addition to some extent the exemption from taxation of the stocks sold by them to investors. This enhanced the selling price of their stocks by making them much more desirable to investors. The great increase in the number of corporations, railroads, cotton mills, tobacco companies, and for other purposes lent force to the movement to

make all stocks more saleable by making them exempt from taxation. The *thin edge* of the wedge exempting any stocks from taxation introduced in 1887 was gradually made broader, until by the act of 1919 it was made to exempt the stocks of all corporations chartered in this State, or wherever two-thirds of its property, though chartered in other states, was taxed in this State. The result has been that though there is now one and a half billions of stocks owned in North Carolina, as above estimated, only $25,000 in taxes on stocks was last year paid into the State Treasury. On this billion and a half dollars in stocks, if taxed like other property, there should have been paid fifteen millions of dollars.

Uniform taxation would not have placed, however, 15 million dollars taxation on this property, because by uniform taxation on all property alike the rate would have been largely reduced to all, to the immense relief of farmers and other owners of real estate, and all others who were unable to invest their money in "tax-free stocks and bonds." The taxation of property equally is the simplest justice which the plaintiffs and all other citizens are entitled to demand, and the failure to observe it is in direct violation of the obligation of every citizen to maintain and support a Constitution which guarantees equality and uniformity in the taxation of property.

In reply to the above, the owners of these vast quantities of "tax-free" securities contend that to tax their stocks is double taxation. There is *no requirement in the Constitution forbidding double taxation.* The opinion-in-chief in this case admits this, and it has often been held, *S. v. Wheeler,* 141 N. C., 775; *Comrs. v. Tobacco Co.,* 116 N. C., 448. But there is a requirement forbidding the exemption of stocks and bonds. Connor and Cheshire on Cons., 263 (1), 267, 277, citing cases.

But it is not true, either as a matter of fact or of law, that because the corporation pays tax on its property that it will be double taxation to tax the stocks and bonds which they have sold to other people, which have become the property of other people, and for which the corporations have received full value.

This matter has been often before this Court and before the Supreme Court of the United States, and *in every case,* without exception, it has been held in both courts that to tax the property of a corporation and to tax the purchasers of its stocks and bonds is not double taxation. Every court in states whose Constitution, like ours, requires uniform taxation of property, has also held that to tax the stocks and bonds of corporations is not double taxation. It is not "double taxation" to tax the shares in the hands of the shareholders when taxes have been laid upon the tangible property and capital stock of the corporation itself. This plea is denied by all the courts, and is unfounded in fact and in justice.

All courts hold that the tangible property and capital stock and franchises of a corporation are taxable as its property; that a corporation is a distinct entity from the individual shareholder, and that the payment of taxation by the corporation can furnish no claim for the exemption of the stock in the hands of the stockholder.

It is estimated, and probably justly, that more than half the wealth in the United States is either owned by corporations or is invested in their bonds and stocks. The latter is idle capital, whose owners do nothing for the public welfare, but simply live on that which comes to them without effort as coupon clippers or dividend drawers. Mr. McAdoo, late Secretary of the United States Treasury, has said, that indeed they "should pay a far higher rate of taxation than any other class in the community, since they do less for the public welfare."

The propaganda for their total exemption from taxation has been so widespread and persistent, and the end sought is so unjust and dangerous to the foundations of society, that it will not be amiss to set out at some length what the courts have all said as to the wholly unfounded hypothesis that to tax shares in the hands of shareholders is "double taxation," and therefore unconstitutional.

The courts all hold that the taxation of stocks in the hands of the owner is *not* "double taxation," simply because the corporation itself is taxed, and even if it were, it would not be unconstitutional.

In *Pullen v. Corporation Commission,* 152 N. C., 553, *Manning, J.,* for the Court said: "It is likewise well settled by the language of our State Constitution, by many decisions of this Court and of the Supreme Court of the United States, and is now generally accepted law, that the property of a shareholder of a corporation in its shares of stock is a *separate and distinct* species of property from the property, whether real, personal, or mixed, held and owned by the corporation itself as a legal entity. It would be useless to cite authority to support a proposition so well established and generally accepted."

*Brown, J.,* in the same case, concurring, says, at p. 562: "I agree, also, that it is well settled that the shares of stock in any corporation, when owned by individuals, are *separate and distinct property* from the assets of the corporation and *may be taxed as such.*"

In the same case *Hoke, J.,* 152 N. C., at p. 582, says, quoting from *Bank v. Tennessee,* 161 U. S., 146: "The capital stock of a corporation and the shares into which such stock may be divided and held by individual shareholders are two distinct pieces of property. The capital stock and the shares of stock in the hands of the shareholders may *both be taxed,* and it is *not double taxation. Van Allen v. Assessors,* 70 U. S. (3 Wall), 573; *People v. Comrs.,* 71 U. S. (3 Wall), 244, cited in *Farrington v. Tenn.,* 95 U. S., 687. This statement has been reiterated

many times in various decisions by this Court, and is not now disputed by any one."

A later case, *Brown v. Jackson,* 179 N. C., 363-371 (1920), cites and approves the above cases.

The above decisions of this State and of the United States Supreme Court are uniform, and without variation or shadow of turning, to the effect that the shares of stock in the hands of the stockholders are separate and distinct from the tangible property, the franchises and capital stock of the corporation, and that it is *not double taxation* to tax the shares in the hands of the stockholders and also to tax the franchises, capital stock, and other property of the corporation. These decisions should be the end of the controversy.

But there are many decisions in other courts to precisely the same effect.

In our own Court are many other cases. In *Comrs. v. Tobacco Co.,* 116 N. C., 446, this Court held, in accordance with the decision rendered by *Chief Justice Smith* in *Belo v. Comrs.,* 82 N. C., 415; 33 Am. Rep., 668, and by *Ashe, J.,* in *Worth v. R. R.,* 89 N. C., 305, and indeed, in accordance with all legal authorities and text-books, as follows: "As to corporations, by all the authorities, it is in the power of the Legislature to lay the following taxes, two or more of them in its discretion at the same time: (1) To tax the franchise (including in this the power to tax also the corporate dividend); (2) the capital stock; (3) the real and personal property of the corporation. This tax is *imperative and not discretionary* under the *ad valorem* feature of the Constitution. (4) The shares of stock in the *hands of the stockholder.* This is *also imperative and not discretionary.*" This last, of course, is due by the owner thereof, the stockholder.

It is further said in the same case, on the identical point presented here, as follows: "The capital stock belongs to the corporation. The shares or certificates of stock are entirely a different matter. They belong to the shareholders individually, and under the Constitution must be taxed *ad valorem* like other 'property belonging to the holder, independently of the taxation upon the corporation, its franchises,'" etc.

This case has been cited with approval: *Comrs. v. S. S. Co.,* 128 N. C., 559; *Lacy v. Packing Co.,* 134 N. C., 571; *Land Co. v. Smith,* 151 N. C., 72; *Pullen v. Corporation Commission,* 152 N. C., 554; 58 L. R. A., 590, 594, 601, note; 60 L. R. A., 367, note.

The corporations are further discriminated in favor of by the provision at bottom of page 148, Laws 1921, that if they hold stock in other corporations (paying the small "excess capital" tax) they shall not pay taxes upon the money invested in such other corporations. When the American Tobacco Company was dissolved it appeared that that com-

pany held controlling stock in 65 subordinate companies as tributaries or aliases, under which to do their style of business.

There is also a provision in the Laws of 1921, p. 148, not far from the bottom, that corporations paying this tax on the small part of the capital known as "excess capital stock" (and amounting in the whole State to almost nothing), "shall not be required to pay tax on the mortgages, bonds, other securities and credits owned by them"—though every one else must do so.

Then there is a further provision, which secures safety even from public criticism, that the Public Treasurer and the State Tax Commission shall not *allow the tax returns of the corporations to be examined,* Laws 1921, top of p. 251, and prescribes a penalty of $1,000, one year's imprisonment, and dismissal from office for any one giving information. This enables them *to do anything and deny everything!*

The banks, which formerly were taxed in the manner provided in Revisal, 5267 and 5268, have now "received theirs," as can be found by reference to Laws 1921, p. 248. Thus everybody who could foresee the coming and necessary increase of taxation has "gotten under shelter" except only those who create the wealth of the State, or who by their own efforts, manual or mental, earn the incomes which they receive.

To this may be added that while the constitutional amendment of 1920 provides that "incomes from property already taxed may be taxed," by recent legislation (Laws 1921, ch. 34, sec. 306 (5), page 210): "Dividends from stock in any corporation, the income of which shall have been assessed and the tax on such income paid by the corporation" shall not be taxed! That is, not only the money invested in "stock" by individuals and others (amounting in this State probably to fifteen hundred million dollars) is absolutely exempted from taxation in defiance of the constitutional provision, Article V, section 3, that "all stocks" and other personal property shall be taxed, but it is now further provided that the *income* or dividends received by the stockholders, and which is paid into their pockets from such stock is exempt from taxation in spite of the recent amendment that "incomes derived from property taxed" (even if the stock had been the property of the corporation) shall be taxed. And it is further provided by a more recent act, Special Session 1921, p. 152, that banking corporations may deduct from taxation 5 per cent of their surplus and undivided profits, besides, also, the total amount of the surplus and undivided profits invested in State or United States bonds, or the bonds of the Federal Farm Loan Banks and Joint-stock Land Banks.

In the very recent case of *Brown v. Jackson,* 179 N. C., 363, it was held that the stock of the Atlantic Coast Line Railroad Company was taxable in the hands of the shareholders, and is not exempt from taxa-

tion like other stocks. This seems to have had very small enforcement, or there is much less of this stock owned in the State than is generally supposed, for as it appears from the State Auditor's report, the entire sum derived from taxes on stocks of all kinds in this State last year is reported as $25,000.

In *Belo v. Comrs.,* 82 N. C., 415, *Chief Justice Smith* held that a tax upon the shares of stock *in the hands of stockholders* was *imperative and not discretionary,* in addition to the tax upon the real and personal property of the corporation, which was also *imperative and not discretionary.* That decision stands unquestioned in our Reports, and has been reiterated and approved by *Ashe, J.,* in *Worth v. R. R.,* 89 N. C., 305, and in every case since.

It is further said in *Comrs. v. Tobacco Co.,* 116 N. C., 446, on the identical point presented here, as follows: "Originally the tax upon the shares of stock was collected of the individual shareholders at their several places of residence. *Buie v. Comrs.,* 79 N. C., 267. But under that method many shares failed to be listed for taxation. Besides, the shares of nonresident owners, except those of national banks, escaped taxation in this State under the ruling in *R. R. v. Comrs.,* 91 N. C., 454. To remedy this, the provision was passed which, in sec. 14, ch. 296, Laws 1893 (which has been substantially reënacted at every session of the Legislature since), requires the list of shares to be given in by the proper officer of the corporation, which shall pay the same in behalf of the shareholders. This *does not affect the liability of the shares to tax as the property of the shareholders,* but is simply for the convenience of the State in collecting the tax. The effect is merely to change the *situs* of the shares for taxation from the residence of the owner to the locality where the chief office of the corporation is situated, as was held in *Wiley v. Comrs.,* 111 N. C., 397. It simply extends to the collection of taxes due by shareholders in other corporations the mode of collection already in force as to shareholders in national banks." *But it should be noted that this is now changed to a total exemption of the owner of stock from all taxation thereon.*

That opinion further said: "The capital stock belongs to the corporation. The shares or certificates of stock are entirely a different matter. They belong to the shareholders individually, and under the Constitution must be taxed *ad valorem* like other 'property belonging to the holder, independently of the taxation upon the corporation, its franchises, etc.'

To the same effect are the decisions throughout the country, which can be found grouped in the elaborate notes to *State Board v. Coggin* (Ill.), 58 L. R. A., 513-618, which cite the above case at pp. 590, 594, 601. On p. 594 it quotes from *Chief Justice Waite,* in *Tenn. v. Whit-*

34—184

*worth,* 117 U. S., 129, as follows: "In corporations four elements of taxable value are sometimes found: (1) franchises; (2) capital stock *in the hands of the corporation;* (3) corporate property; and (4) shares of the capital stock *in the hands of the individual stockholders.*"

The Constitution of this State, Article V, section 3, specifies the only property which may be exempted from taxation, and in it there is no authority to the Legislature to exempt the *owners* of the 'stocks' and 'bonds' of any corporation from payment of taxes upon the true value thereof because the corporation has paid taxes (as it rightly should do) upon its own property, nor for any other reason. In that same article, section 5, there is authority to exempt "wearing apparel, arms for muster, household and kitchen furniture, and mechanical and agricultural implements of mechanics and farmers, libraries, and scientific instruments, or any other personal property, to a value *not exceeding* $300." But the State has felt so poor that every farmer and mechanic for more than 50 years has been required to pay taxes on his clothing for his family, his household and kitchen furniture, his blacksmith's and farming tools and plows "above $25," until, the matter being called to the attention of the Legislature (see concurring opinion in this Court, *Wagstaff v. Highway Commission,* 177 N. C., at bottom of page 360), this exemption was raised to $300 for the first time by the Legislature of 1919.

Those who labor and toil have been required to pay taxes on everything above $25—on their pots and pans, the washing tub of the washerwoman, the farmer on his plows, the blacksmith on his tools, and every one on everything above $25. The Tax Commission now contends that the Legislature, contrary to the equality of taxation, required alike by the Constitution and by justice, had power to exempt, and has exempted, the investment of fifteen hundred millions of the best property in the State, the stock of its most prosperous corporations, from paying any share of the burden of maintaining the Government under which they live, and thus made it nontaxable, though this Court and the United States Supreme Court have held that the property of the corporation itself could not be exempted from taxation by the act of the Legislature. *R. R. v. Allsbrook,* 110 N. C., 137, affirmed on writ of error, 146 U. S., 279.

It is a maxim of the law, as well as of political economy, that the "power to tax is the power to destroy," and there is no power more deadly to the prosperity of a people than to increase taxation on those of small means, and who by their labor and their efforts earn a bare living, while wholly exempting stocks issued and sold by the wealthy and powerful corporations, the just share of taxation on the purchasers of which must thus be paid by the class that is less wealthy and influential.

The owner of a note for money loaned a neighbor is taxed, while the borrower is taxed also on the land mortgaged to secure the loan. They are not corporations, endowed with special privileges.

The decisions from the U. S. Supreme Court are uniform, like our decisions, on this point. In *Van Allen v. Assessors,* 70 U. S. (3 Wall.), 573, 583, and 584, it is said: "The tax on shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with corporate property as absolutely as a private individual can deal with his own, . . . the interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of his capital, during the existence of its charter, in proportion to the number of his shares; and upon its dissolution or termination, to his proportion of the property that may remain, of the corporation, after the payment of its debts. This is a *distinct, independent interest* or property, held by the shareholder like any other property that may belong to him." This is quoted verbatim and approved. *People v. Comrs.,* 71 U. S., at p. 258, the Court saying, "And we add, of course, is *subject to like taxation."*

And in *Tennessee v. Whitworth,* 117 U. S., 129, at p. 136, *Mr. Chief Justice Waite,* in delivering the opinion of the Court, says: "In corporations four elements of taxable value are sometimes found. First, the franchise; second, the capital stock *in the hands of the corporation;* third, the corporate property; and fourth, *the shares of capital stock in the hands of* the individual stockholders."

In *Bank v. Tennessee,* 161 U. S., 146, the Court says: "The capital stock of a corporation and the shares into which such stock may be divided and held by individual shareholders may both be taxed, and it is *not double taxation,"* citing *Van Allen v. Assessors,* 70 U. S. (3 Wall.), 573; *People v. Comrs.,* 71 U. S. (3 Wall.), 244, already cited in *Farrington v. Tennessee,* 95 U. S., 687.

In *New Orleans v. Houston,* 205 U. S., 395, *Mr. Justice Matthews* said, speaking for the Court: "It is well settled by the decisions of this Court that the property of shareholders in their shares, and the property of the corporation in its capital stock, are *distinct property interests,* and, where that is the legislative intent clearly expressed, that both may be taxed," as in the Constitution of North Carolina. This doctrine is fully recognized in *Union Refrigerator Transit Co. v. Kentucky,* 199 U. S., 194, and in many other cases. There are sound reasons for it in public policy.

In a more recent case, *Hawley v. Malden,* 232 U. S., 1 (October, 1913), the Court says: "The property of shareholders in their respective

shares is distinct from the corporate property, franchises, and capital stock of the corporation itself, and *may be separately taxed.*" It also quotes with approval *Corry v. Baltimore,* 196 U. S., 496, that "A state has the undoubted right in creating corporations, to provide for the taxation in that State of all their shares, *whether owned by residents or nonresidents.*"

These uniform decisions by the U. S. Supreme Court and by our own Court—for there is no decision to the contrary—are sufficient, but we may add the following to the same purport from those States, whose Constitution, like ours, require *uniformity* and *equality* in the taxation of property.

*Alabama:* In *Bank v. Hewitt,* 112 Alabama, 553, it is said: "The question has been fully considered and settled that the ownership of land by a corporation is entirely separate from the ownership by share-holders of stock in the corporation. The former is realty, the latter is personalty under all circumstances. The corporation acting through the power conferred by its charter, the shareholder disposes of his shares as he does of any other property he may own. *The property of each is subject to taxation, without regard to the other.* The one may become insolvent, while the other is entirely solvent. A private corporation, like an individual, may invest its money in nontaxable property. When it does so, the property remains subject to taxation. Desty on Taxation, 330; *ibid.,* 371; *Maguire v. Board of Revenue,* 71 Ala., 401; *Van Allen v. The Assessors,* 70 U. S. (3 Wall.), 583. Many authorities might be cited to the proposition."

*Georgia:* In 125 Georgia, 595 (1906), it is said: "It would be more than idle to contend in this day that one who owns shares of stock in a corporation is not the owner of property. It is true the value of the property depends largely, if not entirely, upon a fiction of the law. But every holder of a share of stock in any corporation is a property owner. Shares of stock are bought and sold. They are bequeathed to legatees and descend to heirs. The Legislature may have even the right under our Constitution to declare that the situs for taxation of shares of foreign stock held by a resident of Georgia is not in Georgia, but they clearly have the power to declare that shares of such stock have a situs for taxation in this State. The General Assembly has so declared, and residents in this State *who own this class of property must bear the same burden of taxation as is required of owners of other kinds of property.*"

*Illinois:* In *Bank v. Kinsella,* 201 Illinois, 31 (1903), the Court says: "The taxing of tangible property to the corporation and of the shares of stock to the holders thereof is *not double taxation,*" quoting from *Banking Co. v. Parks,* 88 Illinois, 173, as follows: "This Court has repeatedly held that the tangible property of a corporation and the

shares of stock are separate and distinct kinds of property *under different ownership;* the first named being the property of the corporation, and the last named is the property of the individual stockholders, both of which, under the provisions of the revenue law, being subject to taxation." It also quotes *Porter v. R. R.,* 76 Illinois, 561, and subsequent cases, and the U. S. Supreme Court, in *Minot v. R. R.,* 18 Wall., 206, and *Taylor v. Secor,* 69 U. S. (2 Otto), 575, and other cases, as follows: "These cases hold that such taxation is *neither double nor unconstitutional;* that the property of different ownerships must be taxed by the municipalities from which they derive their powers and franchises." It further quotes, in *Trust Co. v. Lander,* as follows: "A state has a power to tax both the capital and shares of a corporation, unless prohibited by its Constitution, and to do so would not be double taxation." And further quotes several authorities that "The capital stock of a corporation and the shares into which such shares are divided and held by individual shareholders are two *distinct pieces of property.* The capital stock and the shares of stock in the hands of shareholders may both be taxed, and it is *not double taxation.*" Among the many cases cited for this proposition is *Van Allen v. Assessors,* 70 U. S., 573.

*Indiana:* In *Building Co. v. Board,* 30 Indiana App., 13, it is said that the assessment of taxes upon the company for money loaned arising from interest and premium does not amount to double taxation on the grounds that the stockholders are assessed on their shares since their shares are assessable against the stockholders, citing, on p. 21, several cases from the Indiana Supreme Court.

*Iowa:* In *Judy v. Beckwith,* 137 Iowa (1908), 30, the Court says: "A shareholder and the corporation are two distinct persons, their rights and interests with relations to the property and business are distinct and separable. The corporation is the sole owner of such property, while the shares of the capital stock simply entitles the holder to demand his just proportion of the dividends, and when the corporation is dissolved, to also demand his like proportion of the remnant of assets." Then, after citing authorities that the owner of the stock can bring an action to recover them, and that on his death it is distributed to his heirs, the Court adds: "Such shares being personalty, representing valuable rights personal to the owner, no good reason can be assigned why they should not be governed by the usual rule, which makes such property taxable at the owner's domicile. With but very little discord in the cases, save as objection has been occasionally made in academic discussions, such taxation is upheld by all the courts," citing numerous authorities from many states. It is further said (p. 35): *"Capital stock and shares of capital stock represent different property rights, one belonging to the corporation and the other to the shareholders, and both*

*may be taxed without violation of any established principle of law,"* citing a long list of cases from several states, among others, *Belo v. Comrs.,* 82 N. C., 415, and *Shelby Co. v. Bank,* 161 U. S., 149.

In *Head v. Board,* 170 Iowa, 306 (1915), the Court held, citing U. S. authorities, *Bank .v. Des Moines,* 205 U. S., 516, particularly, that "Shares in corporations are property entirely distinct and independent from the property of the corporation. *The tax on an individual in respect to his shares in the corporation is not regarded as a tax as upon the corporation itself."*

*Kansas:* In *Bank v. Moon,* Kansas (1918), the Court held: "The *distinction between* the class of property known as *shares of stock* and the class of property owned by the corporation called *capital stock,* and sometimes called capital, has always been recognized and enforced by the Supreme Court of the United States. Its decisions are authoritative because of the legislative purpose to conform the tax law to the requirements of the Federal law. A *specious argument* frequently advanced is that the shares of stock represent the capital stock, which in turn represents the property of the corporation, so that a tax return of shares by the stockholders, or the corporation for them, and a return of capital stock or property by the corporation, accomplish the same end, but by different methods. The fallacy of this argument is exposed by the decision in *People v. Comrs.,* 71 U. S. (4 Wall.), 244." The Court then quotes from the several cases from the U. S. Supreme Court above set out.

*Kentucky:* In *Franklin Co. v. Bank,* 87 Kentucky, 382, it is said: "The capital stock of a bank and the shares of capital are distinct things, and *both may be taxed.* So, also, the franchise, the surplus earnings, and the real estate are things distinct from the capital stock, and from each other, and the State may tax the bank under each of these heads without imposing double taxation." The Court says: "It may be regarded as settled by the current of authority, and for the purpose of this investigation we will concede that it is so settled, that the appellee's capital stock and the shares of its stock are distinct things. That the capital stock is the money authorized to be paid in, and actually paid in, as the basis of the business of the bank, and the means of conducting its operations. The corporation cannot increase or diminish this capital stock without express authority to do so; for the reason that it constitutes a trust fund which is held by the appellee as trustee, first, for the purpose of meeting and making good its liabilities; second, after discharging its obligations for the benefit of its stockholders. The shares of the capital stock are represented by certificates. Each holder is a beneficiary to the extent of his ownership. But he cannot control or withdraw a dollar of the principal; that must remain as the basis of

the corporation's business operation. The shareholder is entitled only to share in the profits. So, the capital stock and the shares of the capital stock are distinct things, and *both may be taxed*. So, also, the franchise—the right of the corporation to exercise its powers in the prosecution of its business as a distinct right from its capital stock— may be taxed. So, also, its surplus earnings, being distinct from its capital stock, may be taxed. So, also, its real estate, if it does not represent its capital stock, but only its earnings, which are not a part of its capital stock, may be taxed. Angell and Ames on Corporations, secs. 556, 557; *Bradley v. People* (4 Wall.), 459; *National Bank v. Commonwealth* (9 Wall.), 353."

*Massachusetts:* In *Hawley v. Malden,* 204 Mass., 104, the Court held, quoting *New Orleans v. Houston,* 119 U. S., 277, and other U. S. decisions: "It is well settled by the decisions of this Court that the property of the shareholders and the property of corporations in its capital stock, are distinct property interests, and where that legislative intent is clearly expressed *both may be taxed*," adding as citations *Transient Co. v. Kentucky,* 199 U. S., 194, and many other cases, and adding: "There are sound reasons for it in public policy." This case itself was affirmed on writ of error by U. S. Supreme Court, 232 U. S., 1.

In *Loring v. Beverly,* 222 Mass. (1916), 332, it is said, citing the above case: "Shares of stock are property distinct in kind from the capital, franchise or other property of a corporation. Taxation upon one or all of these elements of property of the corporation does not prevent taxation upon the shares of stock as the property of the owner at his domicile."

*New Jersey:* In *State v. Branin,* 23 N. J. L., 484, the Court held: "The stock of incorporated banks, although the bank pays a tax on its capital, may be taxed in the hands of stockholders if authorized by the Legislature." In that State the Constitution does not require, as here, the equal and uniform taxation of all property, including "investments in bonds and stocks."

*Ohio:* In *Bradley v. Bauder,* 36 Ohio State, 35, the Court says: "The argument is that the capital of the corporation is invested in property which is taxed in the name of the corporation, and that the shares in the capital stock, when owned by individuals, only represent proportions in the ownership of such property, and hence, to tax the shares is another mode of taxing the property of the corporation, and that a tax upon both, although the tax upon one is imposed by another State, violates the rule or principle of equality established by the Constitution. This argument, however plausible it seems, has *never met with favor* from the courts. Double taxation, in a legal sense, does not exist, unless the double tax is levied upon the same property within the

same jurisdiction. Here *the property owned by the plaintiffs is not only not the same as that owned by the corporation, but its situs, so far as shares of stock are capable of one, is in a different State.*"

*Tennessee:* In *State v. Bank,* 95 Tennessee, 221, the Court "reaffirms that *taxation of capital stock to the corporation and of the shares of stock to its stockholders is not double taxation.* Capital stock and shares of stock are separate and distinct property interests and form separate and distinct subjects for taxation," citing numerous cases. The capital of a corporation, whatever invested in, and the individual shares of stock, are *distinct species of property. Farrington v. Tennessee,* 95 U. S., 679. The owner of a share of stock owns no part of the capital of the company. *Watson v. Spratley,* 10 Exch., 256. The corporation is its sole owner, holding the same, it is true, in trust, for the purpose for which the corporation was created, and upon its winding up, for the benefit of creditors and shareholders. The ownership of a share of stock, so far as the property of the corporation is concerned, is but the ownership of the right to participate, from time to time, in the net profits of the business, and upon the dissolution of the corporation to a proportion of the assets after the payment of the corporate debts. It is personal property, which, upon the death of the owner, goes to his administrator, although the entire capital of the corporation may consist of real estate. The owner may sell or dispose of his stock at pleasure, and, in so doing, works no change or modification in the title to the corporate property."

*Virginia:* In *Commonwealth v. Charlottesville,* 90 Virginia, 190, the Court quotes with approval and reaffirms the proposition laid down in *Bank v. Richmond,* 79 Virginia, 113, as follows: "The capital stock and the shares of capital stock are *distinct things,* the former belonging to the corporation and the latter to individuals. Both may be taxed, and it is not *double taxation.*" At that time the Constitution of Virginia, like ours, required uniformity in taxation, but at their Convention in 1900 that provision was struck out. In this State it has simply been ignored.

That Court, citing cases, added: "The two are very different things. The capital or capital stock belongs to the corporation; the shares to individuals, and being different property interests, and consequently distinct subjects of taxation, the better opinion is that taxing both is *not double taxation.* Burroughs, Taxation, 170; *Bank v. Richmond,* 79 Va., 113; *Farrington v. Tennessee,* 95 U. S., 679."

*Washington:* In *Bank v. Pierce Co.,* 20 Wash., 683, the Court holds, citing *Van Allen v. Assessors,* and other U. S. decisions, that *"the tax on the shares is not a tax on the capital of a bank.* The corporation is legal owner of all the property of the bank, real and personal; and

PERSON *v.* WATTS.

within the powers conferred upon it by the charter, and for the purpose for which it was created can deal with the corporate property as absolutely as a private individual can deal with his own."

SUMMARY

It appears clearly from the above authorities that it is held uniformly always and everywhere—*ubique, semper et eadem*—that the stock in the hands of shareholders is his individual property, and that the capital stock, franchises, and tangible property of the corporation are its property, that there is a distinct ownership by the two parties of a separate and distinct species of property, and that the taxation of one does not exempt the property of the other from taxation. The cases say the opposite contention is "specious."

*It also appears that in all cases where the Constitution, as in this State, requires that all property, real and personal, shall be taxed, it is unconstitutional to exempt the shares of the stockholders from taxation upon the ground that the property of the corporation, whether capital stock, franchises, or tangible property, is taxed.*

There are some states in which the requirement of the Constitution of North Carolina and of some other states that there shall be "uniform taxation of all property," and that "all moneys, investments in bonds, stocks, etc., shall be taxed uniformly" does not appear. In those states it is held to be discretionary what property shall be taxed. But, in all others, the shares in the hands of the stockholders are required to be taxed, and to refrain from doing so is a clear evasion of an imperative constitutional duty, which was imposed for the protection of those who might not have idle money to invest in stocks and other securities.

But the defendants claim that the Court is without authority to issue a *mandamus* to the Corporation Commission to levy the tax. Every citizen is entitled to have the Court pass upon his claim that the taxes imposed by any statute, or even which is likely to be imposed, shall be declared illegal by the courts if contrary to the constitutional protection. This is constantly done when injunctions are sought against issuance of bonds, and formerly, when there was a provision requiring equation between the taxes on the poll and taxes on the property, this Court repeatedly held statutes laying taxation without observing this equation to be invalid.

This prohibition of the exemption of investments in stocks and bonds is in section 3 of Article V. Section 1 of that same article required, until recently amended, that there should be an equation in the statute levying taxes between the tax on property and the tax on polls, and as to that it has been repeatedly held that when that requirement was not observed the statute levying the tax issue was void. *R. R. v. Comrs.,*

148 N. C., 220; *French v. Comrs.*, 74 N. C., 692; *Trull v. Comrs.*, 72 N. C., 388; *Mauney v. Comrs.*, 71 N. C., 486. In *Board of Education v. Comrs.*, 137 N. C., 310, and in *Jones v. Comrs.*, 107 N. C., 248, it was held that the observance of this equation was absolutely necessary to the validity of all revenue or taxing laws, providing for the ordinary and necessary expenses of the Government, and that an act levying a tax, or making, repairing, or keeping up the public roads of a county exempting polls from taxation was unconstitutional. *S. v. Godwin*, 123 N. C., 697. And there are many others holding that the non-observance of this requirement in section 1 renders the taxing law invalid *in toto.* This provision in section 3 of the same article must, therefore, be void if the requirement that all property, including "investment in stocks and bonds," shall be taxed equally and uniformly is disregarded.

Indeed, in *R. R. v. Comrs.*, 148 N. C., 220, it was held by *Connor, J.* (now the distinguished judge of the Federal Court in Eastern North Carolina), speaking for a unanimous Court, three of whom (*Judges Walker, Hoke,* and the writer) are still on this bench, that a *mandamus* could issue to compel the commissioners to place the omitted items necessary to comply with the equation of taxation upon the tax list. This case has been repeatedly cited and approved since by this Court. See the numerous cases cited thereto in the Anno. Ed. Among other cases citing and approving that case was the opinion in the same volume, *Perry v. Comrs.*, 148 N. C., 521, by *Hoke, J.*, also speaking for a unanimous Court. The cases holding that the revenue act was void if it disregarded section 1 of this Article V of the Constitution, and holding that a *mandamus* could issue were to enforce this provision in order to lighten the tax on property by observing the requirement to levy a tax upon the polls.

In this case, the plaintiffs are seeking under section 3 of the same article to require the lightening of the burdens upon the property of nonstockholders by placing upon the tax list (or holding void an act which does not do so) an immensely greater relief by taxing investments in stocks as required by section 3 of the same article. If, as the above cases hold, it was invalid to omit the levy of a poll tax because this made somewhat heavier the tax on property, for a stronger reason it is necessary to require fifteen hundred millions of money invested (whatever the sum is, it is very large) in the best property of the State to be placed on the tax list, that this *equality* and *uniformity* in taxation of all property may be observed, which the Constitution requires.

For a stronger reason, when the taxes laid upon that large portion of our people who own no stocks in corporations is greatly increased, being probably double or more than it should be by reason of the fact that the investments by the wealthy of their funds in so-called "tax-free stocks"

have exempted them from all the burdens of the Government, the Court should declare the illegality of such exemption. The mere formality, even if it were erroneous, that the complainant taxpayers here ask for relief by *mandamus* cannot vitiate the right of the plaintiffs to have a proper judgment, declaring the statute invalid, as has been so often done in other instances.

It has been over and over again held by this Court that the form of the prayer of relief is immaterial; and, indeed, if there were no prayer at all for relief it would not be a defect, but "the party can obtain any relief to which the facts alleged entitled him." *McCullock v. R. R.,* 146 N. C., 316, and some 50 cases since, many of which are cited in C. S., 506 (3), and many others, with which all lawyers are familiar.

The complaint which is made in this proceeding is based upon the soundest principles of justice, and upon the clear and unmistakable language of the Constitution, which *requires* that "investments in stocks and bonds" shall be taxed uniformly with other property, and it is not denied, and cannot be denied, that a vast sum, if not fully a billion and a half, of money is invested in stocks, owned by the influential classes, and is absolutely exempt from all taxation, and thereby the taxation of all others is probably doubled. These latter are those who pay double taxation, for they not only pay taxes on their own property, assessed often at a high figure, but they pay the taxes which ought to be paid by the owners of "investments in stocks and bonds," as is explicitly required by the Constitution.

This provision of the Constitution is relied upon by the plaintiffs as a shield against the continuance of this discrimination, and this action is brought in accordance with numberless precedents adjudging invalid statutes authorizing issuance of bonds, and which invalidated statutes levying taxation in disregard of the equation between the property and the poll tax, and in divers other cases. A statute which exempts so large a part of the property of the State from all taxation with the result of doubly taxing those who do not own stocks in corporations, the plaintiffs claim, should therefore be declared illegal.

The plaintiffs claim that the illegally exempted stocks should pay fifteen million dollars city, county, and State taxes annually. It may be more or less than that sum. An exact knowledge of the amount cannot be ascertained until this exempted property is placed upon the tax list, like real estate and other property, as the Constitution plainly requires. Until then, only an estimate can be made, for the statute above quoted makes it punishable, with penalty of $1,000, a year's imprisonment, and dismissal from office to give information on the subject from the corporation reports. Laws 1921, ch. 34, sec. 805 (2), p. 222. The corporations offering for sale "tax-free" securities are well protected.

It is quite certain that less than 3 per cent of the people of this State are "stockholders." Yet they have this immense aggregation of property exempted from taxation, and the taxes which they should pay thereon are collected out of the other 97 per cent of the population, who are unable to secure any exemption of their property.

The plaintiffs have asked for a *mandamus* against the Tax Commission and the Tax Commissioner to place this omitted property upon the tax list. The U. S. District and Circuit Courts of Appeal and the Supreme Court of the United States have held that a *mandamus* will lie at the instance of a private creditor to force tax assessors to put property on their books, increase their assessed value, and do such other things as may be necessary to bring the property upon the tax list that taxes may be collected thereon to pay judgments of the courts or bonded indebtedness, notwithstanding, as in the well known case of Carteret County of this State, there may be express legislation forbidding the tax assessors to do so.

If the courts are sufficiently jealous of the rights of private creditors and bondholders to issue a *mandamus* against the officials to collect a debt, how much more jealous should the courts be when the rights of all the people are involved. A leading case upon this subject is *Falls City Construction Co. v. Jimmerson,* 222 Fed., 489; L. R. A. (1918 B), 1102, which holds that a *mandamus* lies at the instance of a judgment creditor of a county whose judgment cannot be collected (because of a permitted tax rate upon the assessed valuation of the property of the county which did not produce sufficient revenue) to compel the tax officials to raise the assessment to the full value of the property as required by the Constitution, although by so doing the taxes throughout the State will not be equal and uniform, as required by the Constitution, because the property in other counties was assessed below its true value.

The legislative enactment relied upon in this case to exempt so immense a mass of property as the money invested throughout the State in stocks, which are exempted from *all* taxation, is in direct violation of the express provision of the highest law, which is the Constitution of the State.

In *Hicks v. Cleveland,* 106 Fed.; 462, decided in this Federal Circuit, *Judges Goff, Simonton,* and *Waddell* sitting, held that a *mandamus* would issue to compel the listing of property to pay interest on railroad bonds in South Carolina, *Judge Simonton* saying, for the Court: "The defense proceeds upon the ground that the Legislature of South Carolina has forbidden its officers to levy and collect the tax to pay this, and claims of the same character—has in effect made it a misdemeanor for them to do so—and that hence a *mandamus* under these circumstances will not lie," but the Court held that the *mandamus* did lie, and that the act of the South Carolina Legislature was unconstitutional.

We have seen that *mandamus* lies to enforce the constitutional provision requiring the listing of all property for taxation, even though the Legislature has sought to exempt it. This has been held in cases where individual creditors only were plaintiffs, and were seeking to enforce collection of their claims.

In *United Brethren v. Comrs.*, 115 N. C., 490, it is said: "The general rule is liability to taxation, and that all property shall contribute its share to the support of the Government which protects it. Exemption from taxation is exceptional. It needs no citation from reiterated precedents that such exceptions should be strictly construed, and if we have any doubts (which we have not), they should be resolved in favor of liability to taxation."

In that case, it was said that the fundamental principle of our Constitution is that all property shall be taxed uniformly except that which is either expressly exempted by the Constitution itself or as to which the power of exemption by the Legislature is left discretionary within the limits prescribed by the Constitution, citing *Redmond v. Comrs.*, 106 N. C., 122.

This case has been cited with approval by *Hoke, J.*, in *Davis v. Salisbury,* 161 N. C., 56, and in *Southern Assembly v. Palmer,* 166 N. C., 75, and other cases; and the doctrine has been reaffirmed at this term in *Trustees v. Avery County,* 184 N. C., 469.

The present case is much stronger, for here not only no exemption is granted or discretionary authority to exempt, but there is an express requirement that investments in stocks and bonds *shall* be taxed.

Since this case was argued here, the President of the United States, yielding to an urgent and Union-wide demand, has urged upon Congress the adoption of an amendment forbidding the issuance of "tax-free" securities, and both Houses of Congress are already engaged in considering a bill to that effect. The steady accumulation of vast masses of wealth by corporations and individuals is a menace to our institutions. It has been largely caused by the exemption of their investments from taxation, thereby doubling the taxation upon all others. In response to an unmistakable public demand, the XVI Amendment was adopted, which required the levy of a heavily graduated income tax to put some restriction upon such vast accumulations, but this has been largely nullified by the device which special interests have secured in both national and state legislation of making it heavily penal for any officer to give information as to the returns on income. In this State it has also been greatly restricted by the recent constitutional amendment limiting the income tax to 6 per cent. In addition, the accumulation of great estates in corporations and in individual hands has been most strongly fostered by disregarding the constitutional provision now before us which forbids the exemption from taxation of "investments in stocks and bonds."

These vast accumulations are seeking investment, and also public favor, now by legislation fostering loans to farmers and others upon mortgages. The result of this will be that many farmers and others will become mortgagors, and therefore tenants at will upon the property they now own, and gradually we must become largely a nation of peasants and laborers. What is needed is not this semi-charity, ostentatiously doled out, but simple justice by enforcing the constitutional provision requiring the taxation of "investments in stocks and bonds" *equally* and *uniformly* with other property, real and personal, "at their true value in money." This will insure a reduction in the rate of taxation upon those who do not possess idle capital to invest in "tax-free" securities, and a heavily graduated income tax may prevent the accumulation, as now, in a few years of sums, which in ordinary and just course of business would require hundreds of thousands of years to accumulate.

The provision of our Constitution prohibiting the issuance of "tax-free" securities should be strictly enforced, both because required by the Constitution and by a wise and just regard for those who produce the wealth of the State, and as a political necessity for the security of our free institutions.

When the United States Supreme Court set aside the income tax law, *Judge Brown,* one of the dissenting judges, stated that if that decision stood this country would "sink into a despotism of sordid wealth," and the other dissenting judges were as outspoken and emphatic. The people of this country stood with the dissenting judges and wrote into the Constitution XVI Amendment under which we have now not only an income tax, but one that (until lately) was graduated to run as high as 68 per cent. Without this, the prophecy of the dissenting judges would not only have become true, but it would have been impossible to carry on the late war, or, indeed, the Government, with its greatly increased expenditures.

There is in this State, beyond all question, a vast amount of double taxation, which is caused entirely by the fact that a vast sum, probably fifteen hundred millions, invested in stocks, besides bonds are entirely exempted from all taxation with the result that the nonstockholding masses are taxed double and even treble their former taxation to make up the taxes which the Constitution requires shall be paid by uniform taxation on all property, including "investments in stocks and bonds."

The result of this vast exemption is that all fluid wealth flows naturally to these illegally "tax-free" investments. Only in the last few days one of the corporations in this State has declared a 500 per cent stock dividend; that is $600 to every owner of stock for $100 invested, and each owner has thus $600 for every $100 put in the property, all of which is tax-free.

Another corporation, in the same manner, has recently added six millions of stock dividends to its four million, giving the owners of the stock ten million dollars of exemptions and dividends instead of four millions. Another in the last few years has increased its capital stock from a few millions to 100 millions, and the owners of the 100 millions all are exempt. These are merely a few instances of what is going on around us. Who will invest money in farms, or lands, or houses, or other investments when the same money invested in stocks grows thus marvelously, and not only the original investment, but all of this marvelous increase is also "tax-free"—the entire burden of the State, county, and city governments being thrown entirely upon the nonstockholding masses. The growing demands of the State, county, and city governments for all purposes must be met, and with a steady growth in the bonded indebtedness of each (the principal being already nearly 100 millions, as well as the interest on which, must be met), taxation is falling with terrific force upon property subject to taxation by reason of the exemption in direct conflict with the Constitution of the most profitable investments in the State.

As to the plea that the statute of limitations is a protection of this illegal exemption because it has been acquiesced in more or less by legislation, it must be said that this legislation has been held illegal by every decision of the Court of this State and of the United States, and of all the other states whose Constitution, like ours, requires equal and uniform taxation of all property, except such as is exempted or authorized to be exempted by the Constitution itself. The fact that the validity of this particular statute has not until now been presented to the court, in its present shape, makes it all the more necessary to hold it invalid. That there is no statute of limitations in favor of unconstitutional legislation was held in *R. R. v. Allsbrook,* 110 N. C., 137, where the Court set aside the exemption which had been granted to two great railroad companies by the Legislature after a lapse of nearly half a century. And in *Mial v. Ellington,* 134 N. C., 131, which overruled *Hoke v. Henderson,* 15 N. C., 1, after it had been affirmed 60 times, and after a lapse of 73 years.

The question whether the courts can hold any act of the Legislature unconstitutional has been debated, but if any case should require that it be done the plaintiffs are presenting it now. So many statutes have been held unconstitutional by this Court without it being deemed a reflection upon the legislative department, surely the remedy should not be denied in a matter which affects vitally the rights of every taxpayer, even the humblest.

If the people of this State, with the facts before them, are content to continue this legislative exemption of fully one-third of the property

of the State (and that third steadily increasing) from all taxation in the hands of less than 3 per cent of its people while taxing the other 97 per cent, three, four, and five times as high as formerly, it is for them to say so. No one can complain if with the facts made known, and with full knowledge of the constitutional provision requiring equality and uniformity in the taxing of all property, and of the former uniform decisions of this Court, as above set out, a majority of the people so wish. This should be a Government of the people, and if they so will, they can permit the continuance of this exemption and consequent great inequality in taxation; but in my humble judgment it should be declared by this Court unconstitutional in accordance with all previous decisions. This provision against exemption of all wealth invested in corporation stocks from bearing any part of the burdens of Government—State, county, and municipal—was put in the Constitution for the protection of the masses of the people against the power of growing and enormous aggregations of wealth in the hands of the few.

Whether the provision in the Constitution forbidding the *exemption* of investments in stocks and bonds is in conflict with legislation which *exempts* all investments in stocks in corporations; and whether the decisions of the courts of this State and of the United States, and others above mentioned, have held such legislation illegal or not is *not a matter of argument, but simply a question of reading the decisions themselves and the constitutional provision, as above set forth.*

In setting forth the decisions themselves holding uniformly such exemption to be in conflict with the express letter of the Constitution, as well as its spirit—and contrary to the eternal justice of "equal rights to all and special privileges to none"—and my deep conviction that this Court should declare these exemptions invalid, I have simply done my duty as it has been given me to see that duty.